ESTATE of William H. LUYTIES, Deceased, William H. Luyties, Jr., Frederick B. Luyties, Mercantile Trust Company National Association and Frederick B. Luyties, Trustees under the Will of William H. Luyties, Deceased, and Mercantile Trust Company National Association, Executor under the Will of William H. Luyties, Deceased, Plaintiffs-Appellants,

v.

Cliffton R. SCUDDER, Defendant-Appellant.

No. 52997.

Supreme Court of Missouri, Division No. 2.

Sept. 9, 1968.

Motion for Rehearing and to Transfer to Court En Banc Denied Oct. 14, 1968.

Lewis, Rice, Tucker, Allen & Chubb, by Chas. Claflin Allen, Dominic Troiani, St. Louis, for plaintiffs-appellants.

G. Carroll Stribling, Joseph Renard, Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, for defendant-appellant.

BARRETT, Commissioner.

Originally in this cause there were three separate actions or proceedings, two in probate court and one in circuit court; they were all consolidated and tried as one action. The consolidated cause has to do with the will of William H. Luyties and the administration of his estate—essentially it is a contest as to certain matters between residuary beneficiaries, natural sons, and one co-executor on the one hand against a co-executor-beneficiary stepson on the other hand. The plaintiffs or movants are William H. Luyties, Jr., and Frederick B. Luyties, sons by the first marriage of William H. Luyties, and Mercantile Trust Company National Association, co-executor. The defendant is Cliffton Scudder, Mercantile's co-executor, and as with the individual plaintiffs a beneficiary under his stepfather's will. It is not necessary to even summarize the lengthy pleadings, the general purpose of the consolidated cause was to remove Scudder as co-executor for misconduct and in a two-count action to recover for his breach of duty a total loss to the estate of $40,815.51 and, second, $27,817.25 benefit gained by Scudder in his personal federal income tax resulting from his misconduct. Upon the final trial in the circuit court the cause was submitted upon the oral testimony of one witness, a lawyer tax expert, the depositions of certain witnesses, the testimony of several witnesses adduced in the probate court proceedings and sixty-four exhibits—all relating to some phase of Mr. Luyties' estate and will and particularly to the original federal estate tax return filed by the co-executors. At the conclusion of the trial the circuit court made a detailed finding of fact and conclusions of law—material here the court found that Scudder as co-executor had breached his duty to the other beneficiaries and therefore judgment was entered against him for the sum he had gained in his personal federal income tax, $27,817.25. The court refused, however, to enter judgment for plaintiffs for additional federal estate taxes lost to them, plus interest and attorney fees, $40,815.51. Both parties have appealed and five briefs have been filed setting forth their various claims in great detail.

In the interest of some brevity of opinion it is neither necessary nor desirable to set forth all the claims of the parties or to detail all the testimonial and documentary circumstances pointed to by the parties—only so much of the record will be noted as is necessary to a determination of the essential issues. In brief these are the background circumstances of the controversy: Mr. William H. Luyties died on July 13, 1959, and Mercantile and Scudder immediately qualified as his executors. Mr. Luyties was the principal officer and moving spirit of Luyties Pharmacal Company, a manufacturer and distributor of homeopathic drugs. After the death of his second wife Mr. Luyties was the owner of 17,182½ shares out of a total of 60,000 shares of the company's capital stock. As of August 1959 the drug company was of the value of about $1,600,000.00, its assets were quite liquid including a portfolio of $585,000.00 worth of blue chip stocks and bonds. Mr. Luyties' natural sons, once estranged, lived in California. Mr. Scudder was taken into the drug business and when Mr. Luyties died was secretary and on the company's board of directors. Under the terms of his will Mr. Luyties' residuary estate was to be divided into three equal parts, one for his sons, the plaintiffs, one to his stepson, Scudder, and a third part in trust for the life of Mrs. Luyties' nurse and then to his sons. In addition, and this pro-

vision turned out to be the crux of the matter, Scudder was given three options, he could take, as indicated, one-third of the residue, or he could take an amount of Luyties stock, at its fair market value, or he could elect to take all of the shares of stock, 17,182½ shares, owned by Mr. Luyties in lieu of one-third. Eventually he chose the latter option and that election is the key background circumstance to this litigation.

Mr. Luyties died July 13, 1959, and on July 18 letters of administration were granted and Mercantile and Scudder qualified and entered upon their duties as co-executors of the will. Almost immediately they were confronted with the duty of filing a federal estate tax return and the first important problem in that connection was choosing the most advantageous date upon which to value the estate. There were two alternatives, the date of Mr. Luyties' death or one year after the date of his death. After some deliberation the co-executors elected as most advantageous to the estate the date of death. The federal estate tax return was not due until October 30, 1960 and in the meanwhile these events transpired: As of August 31, 1959, a public accountant made a full and complete audit of Luyties Pharmacal Company for its board of directors and for the first time everyone concerned was advised of the fluid, liquid financial condition of the company with its stockholders' equity of $1,-413,336.92. At the same time, if not as a consequence, stockholders and directors realized that the important corporate problem was whether, without Mr. Luyties' leadership, the company should continue in business or liquidate. Accordingly on November 12, 1959, the board of directors appointed a committee consisting of Mr. Butler and Mr. Scudder to investigate the possibilities of liquidation and in February 1960 the committee recommended liquidation. Also, in the meanwhile Mr. Scudder consulted counsel in his own personal interest and on November 3, 1959, was advised in detail of the advantages and disadvantages of his three options under the will. In that letter counsel discussed the audit of August 1959 and pointed out that the company's liquid assets were of the value of $1,059,000.00 with a per share value of $17.60 or a total value of the 17,251½ shares of $302,618.00. Counsel also pointed out to Mr. Scudder under the three alternatives the tax problems confronting both the estate and him personally. In discussing the alternative eventually chosen, to take all the Luyties stock, counsel added: "It might be noted parenthetically that as Co-Executor of the estate it is your duty, in any event, to make every effort to contend for the lowest possible valuation of the Luyties stock for tax purposes." On December 29, 1959, Scudder made the formal election to take all the shares of Luyties stock in the estate. It should be interpolated, as the court found, that in March 1961 there were substantial distributions from the estate and of course the co-executors were paid their commissions. On August 3, 1960, in preparation of the federal estate tax return due on October 13, there was a conference, including Scudder, at Mercantile for the purpose of arriving at a value to be placed upon the stock for estate tax purposes. After some discussion a valuation of $6.00 a share was agreed upon and accordingly the tax return was prepared and executed by the co-executors and an estate tax of $235,533.04 was paid. In support of their return the co-executors purported to sustain to the government their $6.00 a share valuation by quotations of stockbrokers as to bid and asked prices of Luyties stock as of July 13, 1959. The return and that valuation was accepted by the government and on February 2, 1962, the Internal Revenue Service issued its closing letter and on March 22, 1962, its letter releasing co-executors from personal liability was issued. As a matter of fact, as of July 13, 1959, the stock was liquidated at $24.71 a share, the final dividend of $4.71 being paid in 1962.

In any event by March 1961 Mr. Scudder was confronted with the problems of

his own personal federal income tax and particularly with the fact that a per share valuation of $6.00 would subject him to a large capital gains tax, $77,000.00 or more while a higher per share valuation would substantially reduce his capital gains and consequently result in a material reduction in his personal income tax. And so before the date upon which the federal estate tax could not be reopened Mr. Scudder through his counsel contacted the Internal Revenue Service and advised it of the Lunnemann audit and of the fact of the liquidation of the Luyties stock for $24.71 a share in contrast to the co-executors' stated value of $6.00 a share. The consequence was that the government reopened the federal estate tax and proposed an additional estate tax of $118,000.00. There were numerous conferences between Internal Revenue Service, the co-executors and all interested parties and a tax suit and in the end, with government approval, all tax matters were settled by the estate paying an additional estate tax of $28,031.64 and Scudder paying additional income taxes of $49,809.68. The basis of the settlement was on an agreed valuation of $9.00 a share plus $15,000.00, in the language of the government, "adjustment for settlement purposes." The trial court found that in the end and as a result of the estate tax reopening Scudder benefited $27,817.25, the difference between the income tax proposed by the government and the amount he actually paid. In those circumstances and in this background the trial court concluded as a matter of law that Scudder as co-executor assumed a position in conflict with the interests of the estate and the residuary beneficiaries, the Luyties brothers, that he thereby breached his obligations as a trustee and accordingly, as stated, entered judgment against him for $27,817.25.

Upon this appeal, both as defendant-appellant and as respondent, Scudder contends that the court erred in finding and holding that as to beneficiaries he had violated his duties as co-executor *"when after discovery of his obligations in that regard* he reported to the Federal Estate Tax Division * * * the true facts as to the value of the shares of Luyties Pharmacal Company." He contends in the first place, despite the fact that if "there are several trustees, each trustee is under a duty to the beneficiary to participate in the administration of the trust" (Restatement, Trusts 2d, § 184), that he relied upon his co-executor Mercantile and its experts and they induced him to execute a federal estate tax return with an incorrect or false value of stock all in violation of the federal tax statutes and regulations. He points to the various rules and regulations and says that they require "in the case of a close corporation, that the Return shall be accompanied by balance sheets and statements of net earnings or operating results and dividends paid over a five-year period preceding the valuation date." He contends that the purported stockbrokers' bid and asked prices were not bona fide sales, were wholly inadequate and did not meet the requirements of the regulations. He contends in any event that the true facts should have been revealed to the government when the return was filed and that his revealing the true facts was but "the performance of a duty imposed on him as Executor by the Federal Estate Tax Laws and the Missouri Probate Code and, therefore, could not possibly have been a breach of his fiducary obligations as an Executor, even though disclosure of such facts may have had some collateral effect on his personal liability for Federal and State Income Taxes." He urges in view of the duty upon the Luyties estate to file and pay the federal estate tax properly due under all the regulations, that there could be no conflict of interest in his revealing the true facts thereby causing the estate tax to be reopened and reassessed. In a reply brief Scudder argues that his "position as a co-executor and his right to elect to take the Luyties Pharmacal Company stock as his share in the estate

**214**

were created by the will of the decedent and, therefore, cannot possibly be deemed to involve a basic conflict which was disqualifying from the standpoint of the intent and purpose of decedent's will." In support of the latter proposition he cites certain rules relating to fiduciaries and "unavoidable conflict of interests." 5 Scott, Trusts, § 504, p. 3564; Restatement, Agency 2d, § 393(a).

■ Scudder's position has been set forth in some detail because it is not deemed necessary to analyze the arguments in depth and demonstrate upon the record that if they are not wholly inapplicable they nevertheless are entirely inadequate in resolution of the basic and fundamental problem involved. The mere statement of the contentions reveals in part their weakness. Nevertheless, all the cited statutes, regulations and cases have been considered and it is sufficient to say that the federal regulations were obviously not intended as immutable principles and doctrines or as implacable rules of law— as evidenced by the settlement the government ultimately made with both taxpayers. Helvering v. Maytag, 125 F.2d 55. It is not proposed on the other hand to explore and demonstrate the applicability or inapplicability of all the contentions urged by the beneficiaries and the co-executor Mercantile, some of these would lead unnecessarily to the more difficult problem of the duties and obligations of both executors as between their beneficiaries and their government. If as the court found there was a conflict of interest in Scudder's conduct and that turns out to be a sufficient basis upon which to dispose of the appeal in its entirety it is not necessary to consider whether he was also guilty of a breach of other fiduciary duties.

■ It is true that Scudder's position came about as a result of the will itself and his dual capacity as a co-executor on the one hand and as a beneficiary on the other hand. These positions are not necessarily incompatible and in certain contingencies involve no conflict of interest with other beneficiaries. The first consideration, however, is that a trustee, or here a co-executor, upon his acceptance of the trusteeship, "is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary." Restatement, Trusts 2d, §§ 169, 170; 2 Scott, Trusts, § 120. Once he accepts the trusteeship he is under a "duty not to profit at the expense of the beneficiary and not to enter into competition with him without his consent, unless authorized to do so by the terms of the trust or by a proper court." Restatement, Trusts 2d, p. 364. Here Mr. Scudder's dual position came about as a result of his stepfather's will and while the will gave him an option it did not in terms authorize him as co-executor to enter into competition with or profit at the expense of his beneficiaries. There was of course no conflict until, as the will permitted, he made an election but once he made the choice he voluntarily permitted himself to be placed in a position in which there was a conflict of his personal interest with that of the beneficiaries. It is not necessary to recount the details of the various conferences and what he knew or didn't know —before he made the election his own lawyer advised him of his duty to seek a low valuation for the benefit of the estate and at one or more of their various conferences the lawyer for the estate said, "Cliff, in this case, you are wearing two hats. * * * You, as the beneficiary or recipient of this Luyties stock, it is to your advantage to have this valued high, because you will have a capital gains, and the higher you have the estate figure, the less estate tax you will have. * * * On the other hand, as executor, it is our duty—well, it was our duty to minimize the taxes for the estate." Thereafter, he made the election as he had a right to under the will and so it is not necessary to impugn his motives, it is enough to say that the act immediately placed his personal interest in conflict with that of his stepbrother beneficiaries. "Furthermore,

there is another important factor to be considered, namely, that under the circumstances the trustee permitted himself to be placed in a position in which there was a conflict of interest between himself and the beneficiaries. This was due to the fact that he would receive 15% of substantial gross income regardless of whether this investment produced any net income available for the beneficiaries. * * * Therefore, the risk of loss of income was placed almost entirely on the beneficiaries. While we do not mean to hold that this was defendant's motive or purpose in making this investment, we do hold that it was a failure to comply with his duty to administer the trust *solely* in the interest of the beneficiaries and amounted to an abuse of discretion in making this investment, when considered in connection with all of the other circumstances hereinabove discussed." Vest v. Bialson, 365 Mo. 1103, 1120, 293 S.W.2d 369, 381, 63 A.L.R.2d 504. The evidence need not be detailed and specific conduct characterized there is an analogy if not precedent in Davis v. Roberts, 206 Mo.App. 125, 129, 226 S.W. 662, 664, in which an executor claiming to own a note failed to include it in an inventory of the estate. The court said, "it was not necessary to show that the estate was the owner of the property, but only to show, as the court found, that there was a real and substantial controversy as to the ownership of the note and that there was reasonable and probable cause to believe that the note belonged to the estate. * * * It is contrary to the policy of the law to permit an executor who stands in a position somewhat like that of a trustee to assume a position where his interests conflict with that of the estate, for it is contrary to general experience that one is able to fairly represent his own interest and at the same time represent those of another which are in conflict with his own." There is more than a lesson in Wiegand v. Woerner, 155 Mo.App. 227, 134 S.W. 596, in which a most distinguished lawyer was the executor of a will as well as the trustee of a trust and as executor claimed as against other trustees the right of apportionment: "This could only mean that Mr. Woerner used his position as trustee to enforce his demand as executor. This he had no right to do, no matter how honest may have been his motives. * * * From that time on and when that situation arose Mr. Woerner should have surrendered his office of executor or of trustee. He could not, consistent with the rigid rules applicable to the duties of a trustee, which required him to be an entirely disinterested party, hold on to both positions." (155 Mo.App. l.c. 261, 262, 134 S.W. l.c. 607.)

Again, it is not necessary to repeat or demonstrate in detail, Mr. Scudder as a trustee-beneficiary pursued a course of conduct in conflict with and antagonistic to that of his beneficiaries in whose interests he was duty bound and as a result personally profited in the sum of $27,817.25 and the court did not err in any respect in entering judgment against him for that sum.

It does not follow as a matter of course, however, that the appeal of his co-executor and the other beneficiaries should be sustained and that in addition to the $27,817.25 benefit to him he should also be compelled to pay the additional estate tax of $28,031.64, interest of $7,759.39 and attorneys' fees of $5,024.48. In this regard the amended petition in the Circuit Court, July 3, 1965, was in two counts. The first count in eighteen paragraphs sought recovery of these items while Count II "as an alternative to their cause of action in Count I" sought to recover the benefit to Scudder of $27,817.25. In their brief as appellants they again rely on his "having voluntarily assumed a position in conflict with the estate and said beneficiaries." Furthermore, in their briefs here and for the first time the appellant-beneficiaries say that this court should surcharge Scudder with "the $17,508.81 paid to him as commissions for acting as executor." Perhaps, in fairness to these appellants, it should be said that in one of

the probate proceedings they did ask for "an order surcharging him the amount of commissions previously paid."

In any event "If the trustee commits a breach of trust, he is chargeable with (a) any loss or depreciation in value of the trust estate resulting from the breach of trust; *or* (b) any profit made by him through the breach of trust; *or* (c) any profit which would have accrued to the trust estate if there had been no breach of trust." Restatement, Trusts 2d, § 205. The first comment on this section, p. 458, is this: "Alternative remedies for breach of trust. If the trustee commits a breach of trust, the beneficiary may have the option of pursuing a remedy which will put him in the position in which he was before the trustee committed the breach of trust; or of pursuing a remedy which will give him any profit which the trustee has made by committing the breach of trust; or of pursuing a remedy which will put him in the position in which he would have been if the trustee had not committed the breach of trust." These are alternative remedies (3 Scott, Trusts, § 205) but it is not necessary here to say whether they are preclusive, while all breaches of trust are condemned it is recognized that there are degrees of seriousness of breach and "The court is apt to deny compensation where there has been an important breach of trust, especially if it be of a willful character." Bogert, Trusts, § 980, p. 407. After considering "serious breaches of trust" Professor Scott says, "On the other hand, where the breach of trust was not so serious, the courts have sometimes diminished the amount of compensation." 3 Scott, Trusts, § 243, p. 2141; Annotation, 110 A.L.R. 566. The rule in the restatement is that "If the trustee commits a breach of trust, the court may in its discretion deny him all compensation or allow him a reduced compensation or allow him full compensation." Restatement, Trusts 2d, § 243. These rules have been applied in varying degrees over the years in a series of cases relating to compensation, costs

and attorneys' fees and here as in those cases it may not be said the court abused its discretion in tacitly approving these allowances or in denying recovery on count one. Sebree v. Rosen, Mo., 349 S.W.2d 865, 890; Vest v. Bialson, 365 Mo. l.c. 1122–1123, 293 S.W.2d l.c. 383, 63 A.L.R. 2d 504; Lipic v. Wheeler, 362 Mo. 499, 512, 242 S.W.2d 43, 50; Wiegand v. Woerner, 155 Mo.App. l.c. 264–265, 134 S.W. l.c. 608.

Accordingly the judgment is affirmed.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

FINCH, P. J., DONNELLY and EAGER, JJ., and BONDURANT, Special Judge, concur.

PRITCHARD, C., concurs.

STOCKARD, C., not sitting.