**CHEM AERO, INC., a California corporation, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 81–5900.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 10, 1982.

Decided Dec. 7, 1982.

Mary L. Fahey, Washington, D.C., argued, for defendant-appellant; Michael L. Paup, Washington, D.C., on brief.

Joseph J. Nesis, Beverly Hills, Cal., for plaintiff-appellee.

Before HUG, FERGUSON and CANBY, Circuit Judges.

FERGUSON, Circuit Judge:

The government appeals the district court's judgment granting a tax refund to the plaintiff taxpayer, Chem Aero, Inc.

A sales agent for Chem Aero brought a state court action against the corporation for unpaid commissions, and in 1974 was awarded a judgment in the amount of $54,082. In order to appeal, the losing party in an action of this kind is required by state law to post a bond for one and one-half times the amount of the award. Chem Aero posted such a bond in the amount of $80,900.[1]

The bond was issued by Highlands Insurance Company ("Highlands") and collateralized to approximately ninety percent of the amount of the bond by an irrevocable letter of credit from Chem Aero's bank.[2] This letter of credit could be applied at any time against a certificate of deposit in the amount of $100,000. The certificate backed the letter of credit and a bank loan in the amount of $20,000. Chem Aero received interest income on the certificate and listed it as a business asset. The judgment against Chem Aero was listed as a liability.

That judgment was affirmed by the court of appeal, and in March, 1976 the Supreme Court of California denied rehearing. The following month Highlands delivered the letter of credit to Chem Aero's bank, which cancelled the letter, drew the amount of the

judgment plus interest, and delivered the bank draft to the claimant in return for a Satisfaction of Judgment.

In 1978 Chem Aero submitted a claim to the Internal Revenue Service ("IRS") for a refund for fiscal year 1975. This claim was based on a claimed deduction for that fiscal year in the amount of $54,082, the amount of the original judgment. Chem Aero contended that the loss accrued in fiscal 1975 when it collateralized the appeal bond, resulting in a net operating loss for that year. Chem Aero sought to carry back the loss to 1972, the last year in which it had realized a profit, resulting in a claimed overpayment.[3]

The IRS determined that Chem Aero actually suffered the loss in 1976, the date when the appeals court affirmed the trial court's judgment and the judgment was satisfied. Following the IRS's reasoning, the loss could only be carried back to 1973, which was of no tax benefit to Chem Aero. After the IRS determination, Chem Aero filed this action in district court for an income tax refund.

The issue in the district court, and now on appeal, is whether Chem Aero was entitled to a tax refund pursuant to I.R.C. § 461(f). That section permits an accrual taxpayer to claim a liability as a deduction even though it may still be contested, provided that the taxpayer, in potential satisfaction of the contested liability, transferred the amount in question during that tax year.

The district court found for the plaintiff, basing the decision on three separate grounds: first, that 26 C.F.R. § 1.461–2(c)(1), which implements I.R.C. § 461(f), is not all-inclusive in its list of deductible transfers; second, that if the regulation is all-inclusive, it would be invalid as too narrow; and third, that Chem Aero's collateralization of the appeal bond was a transfer of property to satisfy a contested liability

---

1. This amount is slightly less than one and one-half times the award, but the difference has no bearing upon the issue presented here.

2. Although the letter of credit did not collateralize the entire amount of the bond, collateral was in excess of the amount of the judgment.

3. A net operating loss in 1975 would generate a refund of approximately $14,000, plus interest, for 1972.

under I.R.C. § 461(f), thereby allowing a deduction in the transfer year rather than in the year of determination. We affirm the district court.

Section 461(f) of the Internal Revenue Code provides for the deduction by a taxpayer of an amount transferred to satisfy a contested liability in the tax year of the transfer if the following four conditions are met:

(1) the taxpayer contests an asserted liability,

(2) the taxpayer transfers money or other property to provide for the satisfaction of the asserted liability,

(3) the contest with respect to the asserted liability exists after the time of the transfer, and

(4) but for the fact that the asserted liability is contested, a deduction would be allowed for the taxable year of the transfer (or for an earlier taxable year) . . . .

Internal Revenue Code of 1954, 26 U.S.C. § 461(f).

In this case the issue is whether the plaintiff has actually transferred "money or other property to provide for the satisfaction of the asserted liability." The transfer requirement is described by Treasury Regulation, 26 C.F.R. § 1.461–2(c)(1):

(c) *Transfer to provide for the satisfaction of an asserted liability*—(1) *In general.* A taxpayer may provide for the satisfaction of an asserted liability by transferring money or other property beyond his control (i) to the person who is asserting the liability, (ii) to an escrowee or trustee pursuant to a written agreement (among the escrowee or trustee, the taxpayer, and the person who is asserting the liability) that the money or other property be delivered in accordance with the settlement of the contest, or (iii) to an escrowee or trustee pursuant to an order of the United States, any State or political subdivision thereof, or any agency or instrumentality of the foregoing, or a court that the money or other property be delivered in accordance with the settlement of the contest. A taxpayer may also provide for the satisfaction of an asserted liability by transferring money or other property beyond his control to a court with jurisdiction over the contest. Purchasing a bond to guarantee payment of the asserted liability, an entry on the taxpayer's books of account, and a transfer to an account which is within the control of the taxpayer are not transfers to provide for the satisfaction of an asserted liability. In order for money or other property to be beyond the control of a taxpayer, the taxpayer must relinquish all authority over such money or other property.

The italicized phrase *"[i]n general,"* preceding the listed methods of transfer, suggests that they are merely illustrative, not all-inclusive. The regulation demands only that "[i]n order for money or other property to be beyond the control of a taxpayer, the taxpayer must relinquish all authority over such money or other property." *Id.*

Chem Aero asserts that its arrangement with Highlands is analogous to a trust or escrow agreement and therefore permissible under the regulatory language. The IRS, however, contends that this arrangement is more akin to the purchase of a bond, and relies on the language excluding bond purchases. Chem Aero asserts on appeal that this language cannot be used to destroy its claim without subverting the statutory purpose of § 461(f), which is "to achieve a more equitable and rational matching of liability disbursements and receipts for accrual basis taxpayers." *Poirier & McLane Corp. v. Commissioner,* 547 F.2d 161, 162 (2d Cir.1976), *cert. denied,* 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977).

In *Poirier* the taxpayer transferred the funds into a secret trust fund to satisfy contested liabilities owed to claimants into a secret trust unknown to them. The taxpayer created the trust in 1964, principally to avoid tax liability in that year. "[T]he exigencies of litigation [did not] compel the company to establish the trust. Its decision to do so was totally voluntary, unilateral and principally dictated by tax motives." 547 F.2d at 166 (footnote omitted). Be-

cause the claimant never knew of the secret trust, there was little assurance that the funds would *remain* beyond the taxpayer's control, raising the clear possibility of tax abuse. *Id.* at 167. Consequently the court concluded that "the assent of the person asserting the liability is required under Reg. 1461–2(c)(1)(ii)." *Id.*

In the case at bar, the arrangement was not secret; the district court explicitly found that the claimant knew of the appeal bond, and that there was no tax avoidance intent on the part of the taxpayer as no phase of the arrangement was structured for the benefit of Chem Aero. Because the structure of the transaction was influenced more by the "exigencies of litigation" than by a desire to avoid tax liability, the transaction resembles the typical escrow arrangement described in *Poirier*:

> Payments pursuant to an escrow agreement, in most instances, are made after the parties have disposed of many of the contested aspects in the case and only a limited legal issue remains for resolution. Often, such settlements are made after a *nisi prius* determination of liability and damages, where all that remains open to the losing party is the right to appeal. In such circumstances, we can see little to distinguish a payment to an escrow account from an advance payment of a contested tax liability.

547 F.2d at 165.

The government contends that there is no transfer here "to an escrowee or trustee pursuant to a written agreement (among the escrowee or trustee, the taxpayer and the person who is asserting the liability)," 26 C.F.R. § 1.461–2(c)(1)(ii). However, the term "among," as used in the regulation, does not require the claimant's signature on the agreement. *Poirier,* 547 F.2d at 171

(Mansfield, J., dissenting). The district court concluded here that the agreement was between the bonding company and the taxpayer, and that the bonding company functioned as a trustee or escrowee, with the written agreement being the bond itself.

The government further contends that there was no agreement because the claimant did not assent to the bonding agreement. However, the trial court found that if assent was required here in addition to notice, it could be implied, as the claimant had not only a judgment but also a bond collateralized with the cash necessary to satisfy it. While such an assent necessarily creates a power of enforcement in the claimant, the same effect results when the claimant is treated as the beneficiary of a trust, an escrow, or a contract.

Finally, relying on *Consolidated Freightways, Inc. v. Commissioner,* 74 T.C. 768 (1980), the government argues that the purchase of a bond to guarantee payment of a contested liability is not a transfer.[4] Had Chem Aero purchased a bond for a fraction of the amount of the asserted liability, we would agree. In this case, however, the bond is ninety percent collateralized. Moreover, Chem Aero seeks a tax deduction for only the amount of the original judgment, $54,082, even though it might be entitled to take a larger deduction for 1975. In theory Chem Aero could deduct the entire amount of the collateral transferred, provided that it declared income for the surplus money returned to the company by the bonding company in 1976. S.Rep. No. 830, 88th Cong., 2d Sess. 100–01, *reprinted in* 1964 U.S.Code Cong. & Ad.News 1673, 1773–74; *Poirier,* 547 F.2d at 169 (Mansfield, J., dissenting). Under these circumstances, the government's reading of this provision unreasonably narrows § 461(f).

---

**4.** *Consolidated Freightways* dealt with the requirement that in order for a freight carrier to be self-insured, the carrier had to file surety bonds with state and federal agencies. As an inducement to a surety company for the filing of surety bonds, Consolidated Freightways deposited moneys with the surety company. These moneys were never used to pay claims; the actual payments came directly from Consolidated Freightways. 74 T.C. at 804. The fact that the payments to the surety were not made for the satisfaction of claims distinguishes *Consolidated Freightways* from the case at bar. In this case the funds (in the form of a certificate of deposit) that Chem Aero pledged to the bank to secure the bond were the only funds that Chem Aero had available for the satisfaction of the judgment, and they were necessarily used for that purpose.

The statutory purpose can be fulfilled by allowing the taxpayer to take the deduction whenever the money for the settlement of the contested liability is irrevocably parted with, provided that the manner of transfer is not open to the possibility of tax abuse. The government's interpretation of the regulation is too narrow, since it prevents this taxpayer from deducting money transferred beyond its control, even when the risk of tax abuse is absent.

Accordingly, the judgment of the district court is AFFIRMED.