**VARIED INVESTMENTS, INC., Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 93–3712.

United States Court of Appeals, Eighth Circuit.

Submitted May 11, 1994.

Decided Aug. 2, 1994.

---

David Ackerman, Chicago, IL, argued, for appellant.

Steven Parks, Dept. of Justice, Washington, DC, argued, for appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

HEANEY, Senior Circuit Judge.

Varied Investments, Inc., ("Varied") appeals the denial of its claim for a tax refund of $4,980,949.62 it paid as a deficiency assessment arising from the Internal Revenue Service's disallowance of a deduction it took under 26 U.S.C. § 461(f). Varied argued that it satisfied the requirements of section 416(f) and therefore was entitled to the deduction. We agree and reverse the judgment of the district court.

This action has its origins in a 1982 lawsuit brought by Farm Fuel Products Corporation ("Farm Fuel") against Varied[1] and other parties over a contract dispute. In 1986 a state court judgment was entered against Varied. In conjunction with its appeal, Varied filed a supersedeas bond in the amount of $6,700,000, which represented approximately 125 percent of the face amount of the judgment. See Iowa R.App.P. 7. A surety company issued the bond pursuant to an indemnification agreement, and Varied secured its obligations under that agreement by a pledge of U.S. government securities to Morgan Guaranty Trust Company of New York as escrow agent. The August 8, 1986, escrow agreement was signed by Morgan Guaranty and Varied but not by Farm Fuel. After the Iowa Supreme Court affirmed the judgment in 1988, the total amount owed Farm Fuel was $8,679,297.57, including pre- and post-judgment interest. Varied paid the judgment with a treasurer's check for $6,700,000 from escrowee Morgan Guaranty and a cashier's check for the remainder.

On its tax return for fiscal year 1986 Varied claimed a deduction of $6,700,000, the amount of the appeal bond, under the authority of 26 U.S.C. § 461(f). The IRS subsequently disallowed the deduction, however, and in 1991 Varied paid an additional $4,980,949.62 in tax and accrued interest. Varied filed a claim for a refund of the deficiency amount paid. In 1992 the IRS disallowed Varied's claim for a tax refund, and Varied

---

1. At that time Varied was known as Grain Processing Corporation. See Jt.App. at A27, ¶ 1. For simplicity we will refer to the corporation as Varied throughout this opinion.

commenced this action. The district court granted the government's motion for summary judgment, and Varied appeals.

We must decide whether the value of the securities Varied transferred to the escrow account in 1986 to collateralize its appeal bond was deductible as a payment of a contested liability under 26 U.S.C. § 461(f). Under that section an accrual basis taxpayer may claim a deduction for a contested liability if

> (1) the taxpayer contests an asserted liability,
>
> (2) the taxpayer transfers money or other property to provide for the satisfaction of the asserted liability,
>
> (3) the contest with respect to the asserted liability exists after the time of the transfer, and
>
> (4) but for the fact that the asserted liability is contested, a deduction would be allowed for the taxable year of the transfer (or for an earlier taxable year)....

 There is no dispute that the first and third conditions were satisfied. We also conclude that the fourth condition was met because, had Varied paid the judgment to Farm Fuel in 1986, it would have been able to deduct the payment in that year as an ordinary and necessary business expense under 26 U.S.C. § 162. The government suggests that this condition was not satisfied because Varied had a right to reimbursement from its insurers that precluded a deduction under section 162. *See Webbe v. Commissioner,* 54 T.C.M. 281, 287 (CCH), 1987 WL 40501 (1987) (deduction not allowed if taxpayer has "expectation of being reimbursed"); *Baloian Co. v. Commissioner,* 68 T.C. 620, 626, 1977 WL 3658 (1977) (no deduction for expense for which taxpayer has "fixed right to reimbursement"); *Electric Tachometer Corp. v. Commissioner,* 37 T.C. 158, 161, 163, 1961 WL 1063 (1961) (deduction allowed even if there is "a possibility that at some future date the taxpayer might receive a reimbursement," so long as the "right to receive reimbursement was not sufficiently fixed to make the expenditure in the nature of an advance"). The record shows, however, that Varied had no fixed right to reimbursement. Its general liability insurer specifically de-

nied coverage and informed Varied in 1986 that it would not pay any portion of the Farm Fuel judgment. Jt.App. at A147. Two other insurers had denied coverage under excess policies in 1985. *Id.* at A33–34, ¶¶ 34, 35. The fact that Varied later received certain insurance proceeds in 1988 and 1989 is not the issue before us. We conclude that the judgment would have been deductible in 1986.

The resolution of this dispute thus focuses on the second condition: whether Varied "transferred" the property "to provide for the satisfaction of the asserted liability." The statute's transfer requirement is further described by treasury regulation section 1.461–2(c) (26 C.F.R.). The district court granted summary judgment for the government on the ground that the regulation required Farm Fuel to sign the escrow agreement, Farm Fuel had not done so, and therefore Varied's transfer of securities to collateralize its appeal bond did not qualify under section 461(f). We review de novo the district court's grant of summary judgment in favor of the government. *Rafos v. Outboard Marine Corp.,* 1 F.3d 707, 708 (8th Cir.1993).

We note at the outset that two other circuits have reached opposite conclusions on the issue of whether the treasury regulation requires a claimant's or judgment creditor's signature on a trust or escrow agreement. The government and the district court relied on *Poirier & McLane Corp. v. Commissioner,* 547 F.2d 161 (2d Cir.1976), *cert. denied,* 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977), which held that the regulation is a reasonable interpretation of the statute and that the regulation requires the party asserting the liability to sign the escrow agreement in order for the judgment debtor to satisfy section 461(f) and be able to deduct the amount transferred. We are more persuaded, however, by the decision in *Chem Aero, Inc. v. United States,* 694 F.2d 196, 200 (9th Cir.1982), which found no such requirement in the regulation and concluded that the "statutory purpose can be fulfilled by allowing the taxpayer to take the deduction whenever the money for the settlement of the contested liability is irrevocably parted with, provided that the manner of transfer is not

open to the possibility of tax abuse." The Ninth Circuit further stated that the government's interpretation of the treasury regulation was too narrow because it prevented taxpayers from deducting money transferred beyond their control even when the risk of tax abuse was absent. *Id.*

The treasury regulation describes section 461(f)'s transfer requirement as follows:

(c) *Transfer to provide for the satisfaction of an asserted liability*—(1) *In general.* A taxpayer may provide for the satisfaction of an asserted liability by transferring money or other property beyond his control (i) to the person who is asserting the liability, (ii) to an escrowee or trustee pursuant to a written agreement (among the escrowee or trustee, the taxpayer, and the person who is asserting the liability) that the money or other property be delivered in accordance with the settlement of the contest, or (iii) to an escrowee or trustee pursuant to an order of the United States, any State or political subdivision thereof, or any agency or instrumentality of the foregoing, or a court that the money or other property be delivered in accordance with the settlement of the contest. A taxpayer may also provide for the satisfaction of an asserted liability by transferring money or other property beyond his control to a court with jurisdiction over the contest. Purchasing a bond to guarantee payment of the asserted liability, an entry on the taxpayer's books or accounts, and a transfer to an account which is within the control of the taxpayer are not transfers to provide for the satisfaction of an asserted liability. In order for money or other property to be beyond the control of a taxpayer, the taxpayer must relinquish all authority over such money or other property.

26 C.F.R. § 1.461–2(c).

■ The Ninth Circuit in *Chem Aero* held that the phrase "in general" preceding the methods of transfer listed in the regulation signaled that the list was illustrative rather than exhaustive. 694 F.2d at 198. Thus an escrow agreement does not fail to qualify as a transfer simply because it lacks the signature of the party asserting the liability. The

Ninth Circuit concluded that the "regulation demands only that 'in order for money or other property to be beyond the control of a taxpayer, the taxpayer must relinquish all authority over such money or other property.'" *Id.* (quoting the regulation).

■ We adopt this reasoning and hold that the regulation as thus construed is consistent with the statutory purpose. We proceed to consider whether the escrow agreement satisfies the requirement that the transferred securities be beyond Varied's control for purposes of section 461(f). We first note that we are not dealing with the mere purchase of a bond, which the treasury regulation states is not to be considered a "transfer[ ] to provide for the satisfaction of an asserted liability." Rather the focus of our inquiry is on the escrow agreement by which Varied pledged U.S. government securities to collateralize the bond. The Second Circuit in *Poirier* observed that

[p]ayments pursuant to an escrow agreement, in most instances, are made after the parties have disposed of many of the contested aspects in the case and only a limited legal issue remains for resolution. Often, such settlements are made after a *nisi prius* determination of liability and damages, where all that remains open to the losing party is the right to appeal. In such circumstances, we can see little to distinguish a payment to an escrow account from an advance payment of a contested tax liability.

547 F.2d at 165.

Varied's escrow account fits the description above and was unlike the "contingent liability reserve" at issue in *Poirier,* where the taxpayer had complete discretion to determine the timing and amounts of its transfers into a trust account. At the time of the transfer in 1986, Varied already had a judgment against it in the amount of $5,309,006 plus costs and interest. In accordance with Iowa law, upon appealing the judgment Varied filed a supersedeas bond for $6,700,000 representing approximately 125 percent of the judgment amount. *See* Iowa R.App.P. 7. Varied collateralized the bond by pledging securities for that amount. The fact that

Varied retained the right to withdraw accumulated interest so long as the value of the escrow fund was at least $7,035,000 is not the equivalent of retaining control over the property. Nor did the existence of interest render "indeterminate" in any important way the value of the transferred property and therefore the amount of Varied's tax deduction. The value of the pledged securities was their face value, and Varied properly claimed a deduction of $6,700,000, the amount of the supersedeas bond. Varied's ultimate judgment liability, when the judgment against it was affirmed on appeal in 1988, was $8,679,-297.57.

Furthermore, Farm Fuel was the express beneficiary of the escrow agreement. We have already concluded that the judgment creditor's signature is not required on a trust or escrow agreement. The related issue of whether the judgment creditor has "assented" to the transfer of property, however, may be relevant to the inquiry of whether the judgment debtor has relinquished control over the property for purposes of section 461(f). *Chem Aero* suggests that if such assent is required, it can be implied where the claimant has a judgment as well as a collateralized bond to satisfy that judgment. 694 F.2d at 199. A claimant's assent can be inferred when the claimant is the beneficiary of a trust or escrow because such arrangements in effect carry the same power of enforcement. *Id.* Varied's escrow agreement expressly provides that Farm Fuel is the beneficiary of the agreement, stating that the securities were placed in escrow "to provide for the satisfaction of any liability of [Varied] or [the surety] to [Farm Fuel] under the terms of the Bond." Jt.App. at A130. Farm Fuel also possessed enforceable rights under equitable subrogation principles. *See Nourse v. Weitz,* 120 Iowa 708, 95 N.W. 251 (1903). We conclude that Varied relinquished control over the property so as to entitle it to take the $6,700,000 deduction on its 1986 tax return pursuant to section 461(f) and the regulations adopted thereunder.

Finally, we find it significant that the government does not allege that Varied engaged in tax abuse through its use of the collateralized appeal bond, and we find no abuse on the facts presented here. Unlike the taxpayer in *Poirier,* which established a contingency reserve fund to pay potential claims, Varied's minimum liability was fixed by the state court judgment against it. One hundred twenty-five percent of the judgment amount was transferred as part of a collateralized appeal bond in accordance with Iowa law. The interest earned in the escrow account was reported as taxable income on Varied's Tax returns. Jt.App. at A31, ¶ 21. The record shows that Varied's transfer of the property was dictated by the "exigencies of litigation" and was not an effort to avoid tax liability. *See Chem Aero,* 694 F.2d at 199; *Poirier,* 547 F.2d at 166.

We conclude that Varied satisfied the requirements of 26 U.S.C. § 461(f) and properly claimed the $6,700,000 deduction on its 1986 tax return. Accordingly we reverse the district court's judgment denying Varied's claim for a refund and direct that judgment be entered in favor of Varied.