EDISON BROTHERS STORES, INC. AND SUBSIDIARIES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Edison Bros. Stores v. Commissioner
Docket No. 26644-93
United States Tax Court
T.C. Memo 1995-262; 1995 Tax Ct. Memo LEXIS 263; 69 T.C.M. (CCH) 2897; June 14, 1995, Filed *263 Decision will be entered under Rule 155. P was assessed countervailing duties by the Department of Commerce. P contested the imposition of these duties but, on Dec. 27, 1985, transferred $ 11,518,106 in trust for the sole purpose of the contingent payment of its obligations on these contested duties. P did not inform the United States, and the United States was not aware, of the existence of the trust during 1985. P deducted the transferred amount on its 1985 Federal income tax return pursuant to sec. 461(f), I.R.C.Held, the amount transferred to the trust with respect to the Brazilian countervailing duty satisfied the requirements of sec. 461(f), I.R.C., and is deductible in computing P's income tax liability for 1985. For petitioners: John P. Barrie and Harold G. Blatt. For respondent: Donald L. Wells. LARO
LARO
MEMORANDUM OPINION LARO, Judge: This case was submitted to the Court fully stipulated. [1]Edison Brothers Stores, Inc., & Subsidiaries petitioned the Court to redetermine respondent's determination of a $ 4,910,206 deficiency in its Federal income tax for its taxable year ended December 28, 1985. We must decide whether petitioner may deduct under section 461(f) *264 moneys transferred to an irrevocable trust; the trust's sole purpose was to finance the payment of a contingent liability that could have arisen under pending litigation. [2] We hold that petitioner may deduct these moneys to the extent set out herein. *265 Background
The instant record consists of the pleadings, stipulated facts, and stipulated exhibits. The stipulated facts and exhibits are incorporated herein by this reference. When it petitioned the Court, petitioner was a Delaware corporation with its principal office in St. Louis, Missouri. For the taxable year in issue, petitioner filed a consolidated Federal income tax return based on a 52-53-week year that ended on the Saturday nearest the last day of December. In 1979, the U.S. Department of Commerce (Commerce) began assessing a countervailing duty (Brazilian CVD) on all nonrubber footwear imports received from Brazil. The United States assessed a Brazilian CVD against petitioner for footwear that it had imported into the United States from Brazil on or after December 7, 1979, and that was entered for consumption into the United States on or before October 29, 1981. The total Brazilian CVD's assessed against petitioner for 1980 and 1981 were $ 3,626,347 and $ 2,223,267, respectively. Petitioner did not pay either of these amounts. Instead, petitioner sought an administrative review by Commerce with respect to the imposition of the Brazilian CVD. Commerce upheld *266 the imposition of the Brazilian CVD. See Notice of Final Results of Administrative Review of Countervailing Duty Order (the Notice) by the United States Department of Commerce, published on April 19, 1985, in Non-Rubber Footwear from Brazil v. Commissioner, 50 Fed. Reg. 15597. In 1985, following the publication of the Notice, an action was brought in the U.S. Court of International Trade by Footwear Distributors and Retailers of America (FDRA), [3] *267 an association of footwear retailers that included petitioner. The action contested the imposition of the Brazilian CVD. On December 27, 1985, petitioner and Centerre Trust Co. of St. Louis (the Trustee) established a trust (the Brazilian CVD Trust) for the benefit of the defendant in the case; i.e., the United States. The Trustee, which was unrelated to petitioner, was a wholly owned subsidiary of Centerre Bancorporation, a large publicly owned and publicly traded bank holding company based in St. Louis, Missouri. [4] The Trustee has administered the Brazilian CVD Trust in accordance with the Trust's terms and the Trustee's normal and customary fiduciary procedures. The Brazilian CVD Trust is a valid trust under Missouri law. The terms of the Brazilian CVD Trust provide in pertinent part: 2. The principal moneys paid to the Trustee hereunder and all accumulated interest and earnings thereon (the "Fund") shall be held by the Trustee solely for the purpose of the payment of obligations of * * * [petitioner], if any, which may arise out of the Court Case with respect to the period December 7, 1979 through December 31, 1980 or which may arise out of any other final determination with respect to the initial liability findings of the Department of Commerce for the period January 1 through October 29, 1981. 3. The Trustee shall make such payments out of the Fund to the Defendant as are required to satisfy and discharge the obligations of * * * [petitioner] to the Defendant with *268 respect to the period December 7, 1979 through October 29, 1981 as finally determined, whether such final determination arises out of settlement or by judgment. The Trustee may make payments after it has received written notice from either * * * [petitioner] or the Defendant that the amount of * * * [petitioner's] liability has been finally determined, and that the Company's right, if any, to appeal such final determination has expired, or at such earlier date that * * * [petitioner] shall notify the Trustee that it has abandoned its appeal or that the Company advises the Trustee of a written settlement of the Court Case and/or the initial liability findings with respect to the period January 1, 1981 through October 29, 1981. It is the intent of this agreement to provide for the payment of only that amount which may be satisfied by the Fund. If the Trustee has paid all assets of the Fund to the Defendant, the Trustee will have no further obligation or duty whatsoever. It is understood that payments may be required to be made by the Trustee at different times due to different periods of contested liabilities. Prior to the payment of any liabilities of * * * [petitioner] to be satisfied *269 hereunder, the Trustee shall first notify * * * [petitioner] and the Defendant in writing at least 10 days prior to any such payment. Such payment shall be made no later than 30 days after written notice was first received by the Trustee. 4. The Trustee shall deliver to * * * [petitioner] the balance of the Fund remaining, if any, after it has received written notice from either * * * [petitioner] or the Defendant that the first of the following events has occurred: (a) the payment of all amounts which * * * [petitioner] is obligated to pay by reason of a final judgment, settlement decree or settlement agreement in the Court Case and also the payment of all amounts with respect to liabilities for the period January 1, 1981 through October 29, 1981; or (b) the issuance of a final judgment, settlement decree or settlement agreement in the Court Case and a similar resolution with respect to the period January 1, 1981 through October 29, 1981 that the Company is not obligated to pay any amounts; or (c) any other final disposition of the obligations for the period December 7, 1979 through October 29, 1981. 7. * * * [Petitioner], by virtue of the Trust, relinquishes all control over *270 the funds contributed to the Trust. The Trustee shall have exclusive authority and complete discretion with respect to the investment * * *, management and control of the Fund. * * * 11. The Trust shall be irrevocable. * * * [Petitioner] shall have no right to amend the Trust. * * * 19. The Trust has been executed and delivered pursuant to the provisions of Section 461(f) of the Internal Revenue Code of 1954, as amended, and the Company has relinquished all authority over the Fund.
Petitioner transferred $ 11,518,106 to the Brazilian CVD Trust on December 27, 1985, and claimed a corresponding deduction on its 1985 Federal income tax return. [5] The $ 11,518,106 was charged on petitioner's books as follows: Prepaid CVD [1]
$ 1,691,384    Brazilian CVD payable
5,836,433
Interest payable
3,990,289    Total
11,518,106    *271 Petitioner in 1985 did not notify the United States of the existence of the Brazilian CVD Trust. The United States was not aware of the existence of the Brazilian CVD Trust at any time during 1985. By letter dated December 30, 1986, petitioner formally notified the Commissioner of United States Customs that the United States was the beneficiary under the Brazilian CVD Trust, and that the Brazilian CVD Trust was established and funded to satisfy any liability to the United States resulting from the FDRA's appeal of the Notice. On May 10, 1994, the U.S. Court of International Trade decided FDRA's appeal. The court held that FDRA was not entitled to relief. See Footwear Distribs. & Retailers of America v. United States, 852 F. Supp. 1078, *272 (Ct. Intl. Trade 1994). Discussion
An accrual method taxpayer generally may not deduct an expense until: (1) All events have occurred which determine the fact of the liability; (2) the amount thereof can be determined with reasonable accuracy; and (3) economic performance has occurred with respect to the expense. Dixie Pine Prods. Co. v. Commissioner, 320 U.S. 516 (1944); see sec. 1.461-1(a)(2), Income Tax Regs.; see also sec. 461(h). Section 461(f) provides a narrow exception to this general rule. Section 461(f) and the regulations thereunder allow a taxpayer to deduct, in the year of transfer, amounts transferred to a trust if the taxpayer satisfies the following four criteria: (1) It was contesting an asserted liability during the year; (2) it transferred money or other property to satisfy that liability; (3) the contest with respect to the asserted liability continued after the transfer, and (4) a deduction would be allowed for the taxable year of the transfer (or an earlier tax year), but for the fact of the contest. Rule 142(a); Davies v. Commissioner, 101 T.C. 282, 286 (1993). Respondent concedes that *273 petitioner met the first and third requirements. Respondent also concedes that petitioner met the fourth requirement. [6] Respondent argues in her brief that petitioner failed to satisfy the second requirement. We disagree. Section 461(f) was enacted by Congress in 1964 in response to the Supreme Court's decision in United States v. Consolidated Edison Co., 366 U.S. 380 (1961), which held that a contested tax, though paid, was not deductible until the contest was terminated. According to the Court, all events fixing the fact and amount of the liability do not occur until the contest is resolved. *274 The legislative history under section 461(f) illuminates the purpose of that section. The Senate report explains: A taxpayer may provide for the satisfaction of an asserted liability by transferring money or other property to the person who is asserting the liability, or by a transfer to an escrow agent provided that the money or other property is beyond the control of the taxpayer. [S. Rept. 830, 88th Cong., 2d Sess. (1964), 1964-1 C.B. (Part 2) 700, 746; emphasis added.]
The Senate report also explains: allowing the deduction of items in the year paid, even though they are still being contested in the courts or otherwise, more realistically matches these deductions up with the income to which they relate than would the postponement of the deduction. * * * [Id., 1964-1 C.B. (Part 2) at 604.]
Petitioner must provide for the satisfaction of the asserted liability by transferring money or property in order to qualify for a deduction under section 461(f)(2). Section 461(f) is silent with respect to the mechanics of such a transfer. Petitioner relies on section 1.461-2(c)(1), Income Tax Regs., which *275 provides that the "transfer" must either be made: (1) To the person who is asserting the liability, or (2) to an escrowee or trustee pursuant to "a written agreement (among the escrowee or trustee, the taxpayer, and the person who is asserting the liability)". (Emphasis added.) Respondent argues that petitioner's transfer of funds to the Brazilian CVD trust did not meet the requirements of section 1.461-2(c)(1), Income Tax Regs., because: (1) Section 1.461-2(c)(1), Income Tax Regs., requires that the claimant/beneficiary be a signatory to the agreement; or (2) the claimant/beneficiary, if not a signatory, must be aware of the trust agreement in order to "assent" to it. Respondent's first argument has been accepted by the Court of Appeals for the Second Circuit in Poirier & McLane Corp. v. Commissioner, 547 F.2d 161 (2d Cir. 1976), revg. 63 T.C. 570, 574 (1975), but has been rejected by this Court and by the Courts of Appeals for the Eighth and Ninth Circuits. See, e.g., Chem Aero, Inc. v. United States, 694 F.2d 196 (9th Cir. 1982); Varied Invs., Inc. v. United States, 31 F.3d 651 (8th Cir. 1994); *276 Consolidated Freightways, Inc. & Affiliates v. Commissioner, 74 T.C. 768, 803 (1980), affd. in part and revd. in part 708 F.2d 1385 (9th Cir. 1983); cf. Rosenthal v. United States, 11 Ct. Cl. 165 (1986). The Court of Appeals for the Eighth Circuit, the court to which an appeal of this case lies, construed section 461(f) in Varied Invs., Inc. v. United States, supra. In that case, the taxpayer posted a bond of $ 6,700,000 to secure payment of a court judgment, and the bond was collateralized by the taxpayer's pledge of U.S. Government securities to the Morgan Guaranty Trust Co. as escrowee for the judgment creditor. The escrow agreement permitted the taxpayer to withdraw accumulated interest so long as it did not reduce the value of the escrow fund below $ 7,035,000. The escrow agreement recited that the securities were placed in escrow to provide for the satisfaction of any liability that the taxpayer owed the judgment creditor under the terms of the bond. The escrow agreement was signed by the taxpayer and the escrow agent. It was not signed by the judgment *277 creditor, however, and it is unclear from the Court of Appeals' opinion whether the judgment creditor was in fact aware of the escrow agreement itself. The District Court in the Varied Investments case held that the pledge of securities failed to satisfy section 461(f)(2) because the judgment creditor had not signed the escrow agreement. The Court of Appeals for the Eighth Circuit reversed. The Court of Appeals held, in acknowledged disagreement with the Court of Appeals for the Second Circuit's decision in the Poirier & McLane case, that the claimant's signature on the escrow agreement was not essential. The Court of Appeals reasoned that a claimant's assent can be inferred when it is the beneficiary of a trust or escrow. The Court of Appeals was persuaded that the taxpayer had relinquished sufficient control over the securities to meet the transfer requirement of section 461(f). The court expressed agreement with similar reasoning of the Court of Appeals for the Ninth Circuit in Chem Aero, Inc. v. United States, supra at 200. Under the decision of the Court of Appeals for the Eighth Circuit, to which an appeal lies in this case, *278 the fact that the trust set up by petitioner lacked the signature of the United States, the beneficiary of the trust, is not conclusive. Rather, taking all the facts and circumstances into account, we inquire whether the funds which petitioner transferred into the trust were placed irrevocably beyond petitioner's control to provide for the satisfaction of its asserted liability to the United States for the Brazilian CVD's. Based on the facts and circumstances of the instant case, we find that petitioner's transfer meets that test and thus qualifies for deduction under section 461(f). First, under applicable State law, the trustee was under a duty to administer the trust in the interest of the United States as beneficiary. Whan v. Whan, 542 S.W.2d 7, 12 (Mo. Ct. App. 1976); see also Estate of Luyties v. Scudder, 432 S.W.2d 210, 216 (Mo. 1965). Second, the trust funds were placed in the hands of an independent trustee and were dedicated explicitly and irrevocably to the payment of any amount finally determined to be due from petitioner to the United States in respect of the Brazilian CVD's. Third, petitioner established *279 the trust after its asserted liability for those import duties was upheld by the Department of Commerce. See Varied Invs., Inc. v. United States, supra at 655. Fourth, petitioner informed the Government of the Brazilian CVD Trust in the year after it was established. Fifth, respondent does not allege that petitioner engaged in tax abuse through its use of the trust, and we find no abuse on the facts presented here. We have considered all arguments made by respondent and, to the extent not discussed above, find them to be without merit. To reflect the foregoing, and to take into account the parties' disposition of the Spanish CVD, see supra p.6, Note 1 to table. Decision will be entered under Rule 155. Footnotes
1. Rule references are to the Tax Court Rules of Practice and Procedure. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue.↩
2. Respondent raised in her brief the following alternative issues under sec. 461(f)(1): (1) Assuming arguendo that sec. 461(f)↩ allows petitioner to deduct a portion of the transferred funds, petitioner may not deduct $ 5,436,730 of interest included therein because petitioner was not contesting an asserted liability for interest on countervailing duties; and (2) assuming arguendo that petitioner may deduct the interest, petitioner's estimate of this interest is excessive. We consider neither of these issues because respondent has not properly pleaded them. Respondent neither reflected these issues in her notice of deficiency, nor raised them in her answer, and we are not satisfied that all the facts necessary to a consideration of these issues are already included in the fully stipulated record.
3. The parties stipulated that this action was brought by Footwear Retailers of America. Because the caption of the case reads "Footwear Distributors and Retailers of America v. United States↩", we find that the parties' use of "Footwear Retailers of America" was shorthand for "Footwear Distributors and Retailers of America".
4. Centerre Bancorporation was subsequently merged into Boatmen's Bancshares, Inc., another large publicly owned and publicly traded bank holding company based in St. Louis, Mo. The Trustee became a wholly owned subsidiary of Boatmen's Bancshares, Inc., as a result of that merger.↩
5. Petitioner's accruals of the Brazilian CVD for book purposes reflect its determination that the assessments for the Brazilian CVD, if upheld, would be subject to interest from the date of importation based upon the applicable provisions of 19 U.S.C relating to Customs Duties.↩
1. In addition to contesting the Brazilian CVD, petitionerwas also contesting countervailing duties imposed on certain imports from Spain (the Spanish CVD). The amount charged to "Prepaid CVD" represented $ 420,089 to be paid with respect to the Spanish CVD and $ 1,271,295 of accrued interest. During 1986, litigation with respect to the Spanish CVD was resolved, and the liability of $ 420,089, plus interest, became due and payable. The liability was paid during 1986 from sources other than Brazilian CVD Trust. The parties stipulated that the treatment of the Spanish CVD is not an issue in this case.↩
6. Respondent determined (and reflected in her notice of deficiency) that certain portions of petitioner's transfer did not meet the fourth requirement; i.e., sec. 461(f)(4)↩. Respondent's notice of deficiency does not elaborate on this determination, and respondent has not addressed it in her brief. Viewing the record as a whole, we conclude that respondent has conceded this determination.