CONTINENTAL NUT COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6813–72. Filed September 12, 1974.

*Jerome N. Field*, for the petitioner.
*Randall G. Dick*, for the respondent.

### OPINION

QUEALY, *Judge:* Respondent determined a deficiency in the Federal income tax return of the petitioner for the taxable year 1970 in the amount of $76,194.83.

The sole issue for determination is whether petitioner may properly accrue and deduct under section 461(f)[1] certain property taxes which were in dispute during the years involved.

All of the facts have been stipulated, and the case was submitted for decision under Rule 122 of the Court's Rules of Practice and Procedure.

Petitioner is a California corporation with its legal address in Chico, Calif. Petitioner kept its books and filed its Federal income tax returns on the accrual basis. For the fiscal years involved, those returns were filed with the district director of internal revenue at San Francisco, Calif.

At all times material herein, petitioner has occupied certain real property in Butte County, Calif.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

On February 23, 1966, there were placed on the secured tax roles of Butte County so-called "escaped assessments" and penalties against said property for the years 1963 to 1965, inclusive, predicated upon the assessor's valuation of the property. The petitioner thereupon appealed to the board of supervisors of Butte County, sitting as a board of equalization, for an order directing the cancellation of these assessments. On March 23, 1966, the board determined that the petitioner was liable for additional assessments on account of said property in a lesser amount. That determination was duly protested by the petitioner. Meanwhile, the taxes and penalties in dispute were not paid.

On May 20, 1966, petitioner duly received a tax bill, dated May 18, 1966, in the amount of $149,272.82, including interest on account of the unpaid tax liability arising out of the determination by the board of equalization. By order of the assessor, on June 30, 1966, petitioner's property was sold to the State of California pursuant to sections 3436 and 3439 of the California Revenue and Taxation Code (West 1954) (hereinafter referred to as California Code). Pursuant to section 4101 of said code, petitioner could redeem said property by the payment of the taxes. The period of redemption expired on July 1, 1971.

During the taxable year 1969, petitioner received a tax bill in the amount of $75,876 on account of the assessment against said property in Butte County. Petitioner duly protested the assessment of said taxes. On December 10, 1969, petitioner paid the first installment of $43,132.24 on account of said assessment, leaving a balance of $42,132.24 which was due on April 10, 1970. On March 31, 1970, Butte County levied an additional assessment for the taxable years 1968 and 1969, thereby increasing the property tax due on April 10, 1970, to $70,021.10. Said tax of $70,021.10 was added to the burden or lien against the petitioner's property which already had been "sold" to the State on June 30, 1966. This meant that in order to redeem the property the petitioner would be required to pay the 1966 tax bill in the amount of $149,272.82, together with the balance due on account of the 1968 and 1969 tax bills of $70,021.10.

As of June 30, 1970, petitioner accrued on its books the liability of $70,021.10, of which $348.50 was capitalized and $69,672.60 was charged to expense as property taxes. No portion of this amount was paid until July 1, 1971.

As of July 1, 1971, the total unpaid taxes assessed against the petitioner's property by Butte County amounted to $283,651.82. At that time, petitioner paid under protest the sum of $56,730.36 representing 20 percent of the amount due.[2]

---

[2] Sec. 4219 of the California Code allows electing taxpayers to pay delinquent taxes in installments "by payment, in the same manner as a redemption, of 20 percent, or more, of the redemption amount."

On its income tax returns for the fiscal years ending June 30, 1966, and June 30, 1970, pursuant to section 461(f), petitioner accrued the respective property taxes that it was contesting.[3] Although a lien was placed on the petitioner's property because of the taxes, the petitioner at all times had the free and unrestricted use of all its property in pursuit of its business activities.

Section 461(a) relating to the deductibility of property taxes provides that the "amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income." Section 461(f) further provides a special rule for liabilities of the taxpayer which are contested:[4]

(f) CONTESTED LIABILITIES.—If—
(1) the taxpayer contests an asserted liability,
(2) the taxpayer transfers money or other property to provide for the satisfaction of the asserted liability,
(3) the contest with respect to the asserted liability exists after the time of the transfer, and
(4) but for the fact that the asserted liability is contested, a deduction would be allowed for the taxable year of the transfer (or for an earlier taxable year),

then the deduction shall be allowed for the taxable year of the transfer. * * *

Section 461(f) was enacted in the Revenue Act of 1964 as a Senate amendment. In the report of the Finance Committee, it was explained as follows:[5]

The new subsection (f) provides in effect that if (1) a taxpayer contests an asserted liability (such as a tax assessment).; (2) such taxpayer transfers money or other property to provide for the satisfaction of the asserted liability; (3) the contest with respect to the asserted liability exists after the time of the transfer; and (4) but for the fact that the asserted liability is contested, a deduction or credit would be allowed for the taxable year of the transfer (or, in the case of an accrual method taxpayer, for an earlier taxable year for which such amount would be accruable), then the deduction or credit shall be allowed for the taxable year of the transfer.

The new subsection (f) is not limited to an asserted liability for taxes, but applies to any asserted liability where the requirements of the new subsection (f) are met. A taxpayer may provide for the satisfaction of an asserted liability by transferring money or other property to the person who is asserting

_____

[3] The accrual in the earlier year is in issue in the determination of petitioner's tax liability for fiscal year 1970 as a result of the deduction of a net operating loss carryover.

[4] Prior to the enactment of sec. 461(f) the accruability of taxes was governed by the "all events" test established by the Supreme Court in *United States* v. *Anderson*, 269 U.S. 422, 441 (1926). In the area of contests of tax liability, the Supreme Court in *United States* v. *Consolidated Edison Co.*, 366 U.S. 380 (1961), held that the "all events" test was not met when a tax assessment was paid but liability therefore was specifically denied and the assessment contested. Recognition of the liability by the taxpayer was held "essential for the accrual of an item of expense for deduction purposes." *Richmond Hosiery Mills* v. *United States*, 305 F. 2d 840, 843 (Ct. Cl. 1962).

[5] S. Rept. No. 830, 88th Cong., 2d Sess., part 2, p. 243 (1964).

the liability, or by a transfer to an escrow agent provided that the money or other property is beyond the control of the taxpayer. However, purchasing a bond to guarantee payment of the asserted liability, an entry on the taxpayer's books of account, or a transfer to an account which is within the control of the taxpayer is not a transfer to provide for the satisfaction of an asserted liability.

It is clear that in order for the petitioner in this case to accrue and deduct the contested liability for property taxes, which were not actually paid, the so-called sale of such property pursuant to the assessment must be deemed to have effectively placed the property beyond the "control" of the taxpayer.

As a practical matter, a "sale" pursuant to section 3436 of the California Code does not effectively deprive the petitioner of either ownership of or control over the property. "The only practical effect of a sale of property [pursuant to section 3436 of the California Code] * * * is to start running the five years within which redemption can be effected and at the expiration of which a deed may be issued to the state." See *In re Seich*, 46 Cal. App. 363, 189 Pac. 314, 316 (2d Dist. Ct. App. 1920). From the time of the sale of land to the State for nonpayment of taxes, owners have 5 years to redeem, during which period legal title remains in the owners as taxpayers subject to a lien in the favor of the State. *Weber* v. *Wells*, 154 F. 2d 1004 (C.A. 9, 1946). Section 3441 of the California Code makes it a misdemeanor for taxpayers to impair "tax sold property or tax deeded property." However, this protects the State's lien but does not deprive the taxpayer of the right to use the property.

The petitioner incorrectly argues that after the "sale," the property does not belong to the petitioner. The "sale" to the State does not even divest the taxpayer of title. See *Weber* v. *Wells, supra*. On the contrary, under section 3511 of the California Code,[6] it is only after the 5-year period of redemption has expired, when the tax-sold property is deeded to the State, that the State acquires title to, and control and authority over, the property.[7] Thus, although the property is technically "sold" to the State, the property still belongs to the taxpayer until the period of redemption expires and a deed transferring ownership is executed.

In view of the above, it is clear that the sale to the State was not a transfer in which the petitioner relinquished control and authority

---

[6] Sec. 3511. Execution and acknowledgment; duplicates

Not less than 21 days nor more than 35 days after the first publication of the notice of intent to deed tax-sold property and at least five years after the property was sold to the state, the tax collector shall, without charge, execute a deed in duplicate conveying the property to the state. * * *

[7] *Glunt* v. *City and County of San Francisco*, 274 Cal. App. 2d 269, 79 Cal. Rptr. 513, 519 (1st Dist. Ct. App. 1969) : The court held that the State "upon the tax deed being issued to it, acquired absolute title to the property, together with the rights to possession, rents and profits therefrom, and the right to dispose of the property as any other owner of real property."

over the property. The "sale" merely produced a lien on the property "sold." At all times the petitioner had free and unrestricted use of all its property in pursuance of its business activities. The retention of such broad authority over the property precludes the applicability of section 461 (f) (2).

*Decision will be entered for the respondent.*

