WARNOCK DAVIES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11045–91.        Filed October 4, 1993.

*James Roach II* and *David A. Joffe,* for petitioner.
*Marikay Lee-Martinez,* for respondent.

OPINION

WRIGHT, *Judge:* Respondent determined a deficiency in petitioner's 1987 Federal income tax in the amount of $111,155.63. The deficiency is based on a $300,700 adjustment to income. Petitioner did not contest $700 of the adjustment related to an increase in rental income. As such, only the $300,000 adjustment remains in dispute.

The sole issue for consideration for taxable year 1987 is whether under section 461(f)[1] petitioner is entitled to a deduction in the amount of $300,000 comprised of $80,000 cash and the fair market value of his residence deposited into escrow during the year.

Most of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein. Petitioner resided in Phoenix, Arizona, at the time the petition was filed.

Petitioner was the president and chief executive officer of Newbery Corp. (Newbery) from February 18, 1986, to June 4, 1987, when petitioner resigned those positions. Petitioner continued to serve as a director and chairman of the board of directors for Newbery until November 5, 1987.

In July 1986, pursuant to an employment agreement entered into by petitioner and Newbery on June 6, 1986, Newbery loaned petitioner $200,000 so that petitioner could purchase a residence in Maricopa County, Arizona, located at 6411 South River Drive, No. 61, Tempe, Arizona (residence). The loan was evidenced by a promissory note in favor of Newbery in the amount of $200,000 and secured by a deed of trust on the residence. Both the promissory note and the deed of trust were recorded. Petitioner purchased the residence in 1986 for $209,000.

In May 1987, as a result of a cash-flow shortage, Newbery agreed to forgive the indebtedness on the $200,000 promissory note from petitioner and to release the deed of trust

---

[1] All statutory references are to the Internal Revenue Code in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

related to that indebtedness in consideration of a salary reduction by petitioner. Newbery continued to experience financial problems and was having difficulties with its primary secured creditor, United Bank of Arizona (United Bank). On June 4, 1987, it was contemplated that Newbery would file for protection under chapter 11 of the Bankruptcy Code. United Bank advised Newbery that if petitioner remained as president and chief executive officer of Newbery, United Bank would attempt to convert the chapter 11 bankruptcy case to a chapter 7 bankruptcy case. Accordingly, the employment agreement between petitioner and Newbery was terminated. On June 9, 1987, Newbery filed a petition under chapter 11 of the Bankruptcy Code in the bankruptcy court and became the debtor-in-possession in the chapter 11 proceeding.

Following the filing of the Newbery chapter 11 petition, Newbery's attorneys informed petitioner that Newbery had claims against him under the Bankruptcy Code for preferential transfers made to petitioner from Newbery within the 1 year immediately preceding the filing of the bankruptcy case.[2] In October 1987, petitioner attended a meeting at Newbery's bankruptcy attorney's office during which he was advised that Newbery would bring an action in bankruptcy court to avoid the transfers if a settlement was not reached. As a result, petitioner and Newbery agreed to settle the potential claims for $300,000. On December 8, 1987, prior to Newbery's filing of an adversary proceeding in the bankruptcy court against petitioner concerning the preferential transfers, petitioner and Newbery entered into a settlement agreement (agreement) under which petitioner was required to deliver to an irrevocable escrow $80,000 and title to the residence. On December 15, 1987, petitioner deposited with the escrow agent a special warranty deed to the residence naming Newbery as grantee and a certified check in the amount of $80,000 payable to Newbery.

The agreement required the approval of the bankruptcy court before it could take effect and allow Newbery to obtain possession of the items in escrow. From December 8, 1987, the date of the agreement, until the end of 1990 petitioner

---

[2] The amount of these claims was estimated by Newbery's counsel to be somewhere in the range of $500,000 to $800,000.

continued to occupy the residence. Petitioner paid homeowner's fees of $150 per month related to the residence while he occupied the residence during this period. The homeowner's fees paid by petitioner covered fire and hazard insurance for the residence but did not cover liability insurance for the residence.

On December 23, 1987, Newbery filed an application for approval of settlement agreement with the bankruptcy court. Various of Newbery's creditors objected to the agreement. Newbery filed a reply to the objections on April 27, 1988, and on May 4, 1988, withdrew the application for approval of the settlement agreement. The escrow agent did not return the $80,000 or the special warranty deed deposited by petitioner. As such, petitioner filed two proofs of claim in the Newbery bankruptcy proceeding regarding the $80,000 and the deed to the residence.

In January 1989, Newbery filed another motion with the bankruptcy court seeking approval of the agreement. In response, on February 15, 1989, petitioner filed an objection to Newbery's application for approval of the settlement agreement. On March 13, 1989, the bankruptcy court denied the application and ordered the escrow agent to return the $80,000 and the special warranty deed to petitioner. Thereafter, in March 1989, Newbery filed a complaint against petitioner as an adversary proceeding in the Newbery bankruptcy case seeking to set aside preferential transfers and fraudulent conveyances by Newbery to petitioner.

In January 1990, petitioner and Newbery entered into a new settlement agreement that was approved by the bankruptcy court; the adversary proceeding was dismissed. As a result, the escrow agent returned the $80,000 plus interest to petitioner, and Newbery delivered to petitioner a quitclaim deed[3] to the residence.

On his 1987 Federal income tax return, petitioner reported $200,000 as miscellaneous income under the heading of "bonus" from Newbery which represented the forgiveness of petitioner's promissory note to Newbery relating to the residence. In 1987, petitioner also claimed miscellaneous income tax deductions in the amounts of $220,000 for the fair mar-

---

[3] Newbery was unable to return the original special warranty deed because it was lost by the escrow agent.

ket value of the residence and $80,000 for the cash he deposited into escrow. Respondent disallowed both deductions under section 461(f).

In order for petitioner to be entitled to a deduction for the items deposited into escrow, he must prove that he satisfied all four criteria enumerated under section 461(f). Rule 142; *Willamette Indus., Inc. v. Commissioner*, 92 T.C. 1116, 1123 (1989). Section 461(f) provides:

> SEC. 461(f). * * * If—
> (1) the taxpayer contests an asserted liability,
> (2) the taxpayer transfers money or other property to provide for the satisfaction of the asserted liability,
> (3) the contest with respect to the asserted liability exists after the time of the transfer, and
> (4) but for the fact that the asserted liability is contested, a deduction would be allowed for the taxable year of the transfer (or for an earlier tax year) determined after application of subsection (h),
> then the deduction shall be allowed for the year of the transfer. * * *

Essentially, respondent contends that petitioner failed to satisfy requirements (1), (2), and (4) in that there was no contest of an "asserted liability", the transfer to the escrow agent of the deed and the $80,000 was insufficient to satisfy the alleged asserted liability, and a deduction would not otherwise be allowable absent the contest. Petitioner argues otherwise; we agree with petitioner.

*Asserted Liability*

Section 1.461-2(b)(1), Income Tax Regs., defines an asserted liability as an item with respect to which, but for the existence of any contest in respect of such item, a deduction would be allowable under an accrual method of accounting. To be deductible under the accrual method, all events must have occurred which determine the fact of the liability and the amount can be determined with reasonable accuracy. *Apple Computer, Inc. v. Commissioner*, 98 T.C. 232, 238 (1992); sec. 1.461-1(a)(2), Income Tax Regs. Respondent argues that the dispute between Newbery and petitioner does not qualify as an asserted liability for two reasons: (1) The "all events" test has not been satisfied; and (2) Newbery's oral threat of a potential lawsuit does not rise to the level of an "asserted liability".

Respondent's arguments miss the mark. Respondent contends that the all events test has not been satisfied because the establishment of the liability was contingent upon subsequent events, primarily the approval by the bankruptcy court of the agreement subject to the objection of Newbery's creditors. Essentially, the approval of the bankruptcy court represents the final step in the resolution of the dispute between petitioner and Newbery regarding the facts and the law in the Newbery bankruptcy proceeding and the corresponding agreement. Section 1.461-2(b)(2), Income Tax Regs., provides the following:

A contest arises when there is a bona fide dispute as to the proper evaluation of the law or the facts necessary to determine the existence or correctness of the amount of an asserted liability. * * *

This contest prevented all the events necessary to establish the amount and the fact of the liability from occurring in 1987. In fact, section 461(f) was enacted for the specific purpose of providing an exception to the general rules of the accrual method where a liability is contested. S. Rept. 830, 88th Cong., 2d Sess. (1964), 1964-1 C.B. (Part 2) 505, 604. The Senate report reflects that "it is unfortunate to deny taxpayers a deduction with respect to an item where the payment has actually been made, even though the liability is still being contested either as to amount or as to the item itself." *Id.*

Further, respondent asserts that the all events test is not met because the amount of the liability could not be determined with reasonable accuracy. Although the exact amount of the liability could not be determined, as some of the preference claims were more tenuous than others, Newbery averred that it could recover anywhere from $500,000 to $800,000. A precise calculation is not required to satisfy the accrual test. Sec. 1.461-1(a)(2), Income Tax Regs.; see *Southern Pac. Transp. Co. v. Commissioner*, 75 T.C. 497, 634 (1980). If a portion of the liability can be computed with reasonable accuracy, a deduction may be allowed in that amount. Sec. 1.461-1(a)(2), Income Tax Regs. As petitioner was willing to concede a liability of $300,000, pending approval of the bankruptcy court, that portion is considered to be determined with reasonable accuracy for present purposes.

Section 1.461-2(b)(1), Income Tax Regs., mentions a notice of a local real estate tax assessment or a bill received for services as the only examples of asserted liabilities. As such, respondent reasons that an asserted liability must be reduced to writing; hence, Newbery did not assert a liability until 1989 when it filed a formal adversary proceeding against petitioner. Respondent's position is inaccurate. The examples in the regulations merely serve to illustrate potential types of asserted liabilities and are not intended to be exclusive. Nothing in the language of the statute or its legislative history[4] suggests that for a liability to be asserted it must be in writing. Respondent's interpretation of section 1.461-2(b)(1), Income Tax Regs., is overly restrictive. The record reveals a persistent battle between Newbery and petitioner in which Newbery continued to assert its claims against petitioner. Newbery's bankruptcy attorneys spent almost an entire day outlining the claims for petitioner, and they repeatedly insisted that they would be successful if the issue was litigated. We are satisfied that Newbery asserted a liability against petitioner.

Accordingly, we find that there existed a contest of an "asserted liability" as defined in section 1.461-2(b), Income Tax Regs.

### Transfer of Money or Property Beyond "Control"

To qualify for a deduction of a contested liability under section 461(f)(2), petitioner must have transferred money or property to provide for the satisfaction of the asserted liability. The transfer may be to an escrowee, pursuant to a written agreement that the money or other property be delivered in accordance with the settlement of the contest, and must be beyond petitioner's control. Sec. 1.461-2(c), Income Tax Regs. In order for the money or other property to be beyond the control of petitioner, he must have relinquished all authority over the property. *Id.*

It is undisputed that petitioner transferred control of the $80,000 cash in the form of a certified check; however, the parties vehemently disagree as to whether petitioner transferred the residence beyond his control. The fundamental

---

[4] S. Rept. 830, 88th Cong., 2d Sess. (1964), 1964-1 C.B. (Part 2) 505, 604; S. Rept. 830 (Part 2), 88th Cong., 2d Sess. (1964), 1964-1 C.B. (Part 2) 700, 746.

point of controversy is petitioner's continued occupancy of the residence after the agreement.

Petitioner's transfer of the deed to his residence into escrow in the instant case is similar to the taxpayer's use of a certificate of deposit to secure an appeal bond and a letter of credit in *Chem Aero, Inc. v. United States,* 694 F.2d 196 (9th Cir. 1982). In *Chem Aero,* the taxpayer was the losing party in a California State court action in 1974. In order to appeal the judgment State law required the losing party to post a bond for 1½ times the amount of the award. As such, the taxpayer purchased an appeal bond to secure the judgment. The bond was collateralized by an irrevocable letter of credit which was backed by a certificate of deposit. The taxpayer received interest income on the certificate and listed it as a business asset on its financial statements. The judgment was listed as a liability. In 1976, the judgment was upheld and the amount of the award plus interest was drawn from the certificate and transferred to the claimant. The taxpayer filed a claim for refund of its fiscal year 1975 income taxes based on the original amount of the judgment. The court allowed the deduction and concluded that the appeal bond satisfied the requirements of section 461(f)(2). The Court of Appeals for the Ninth Circuit noted in *Consolidated Freightways, Inc. v. Commissioner,* 708 F.2d 1385, 1393 (9th Cir. 1983), affg. in part and revg. in part 74 T.C. 768 (1980), that crucial to its decision in *Chem Aero* was the fact that the certificate of deposit secured the letter of credit, even though the taxpayer continued to list it as an asset and earn interest income on it. *Willamette Indus., Inc. v. Commissioner, supra* at 1127.

Respondent argues that petitioner's continued occupancy is tantamount to continued control over the residence and that placing minor restrictions on the property through the use of escrow is insufficient to satisfy the control requirement of section 461(f)(2). As support for this position, respondent cites *Continental Nut Co. v. Commissioner,* 62 T.C. 771 (1974). The corporate taxpayer in *Continental Nut Co.* owned real property located in Butte County, California, upon which a real property tax assessment was levied. As a result, the property was deemed "sold" to the State of California pursuant to California law and the taxpayer claimed a deduction for the contested property taxes. The "sale", however, merely

produced a lien on the property. A deed was never transferred to the State, and the taxpayer remained in possession of the property and was provided a 5-year redemption period during which it could pay the back taxes and reclaim the property.

The taxpayer argued that after the "sale", the property no longer belonged to it; therefore, it was entitled to a deduction in the amount of the tax assessment under section 461(f). We disagreed, stating the following:

> On the contrary * * * it is only after the 5-year period of redemption has expired, when the tax-sold property is deeded to the State, that the State acquires title to, and control and authority over, the property. Thus, although the property is technically "sold" to the State, the property still belongs to the taxpayer until the period of redemption expires and a *deed transferring ownership is executed.* * * * [*Id.* at 774; emphasis added; fn. ref. omitted.]

Although this Court did consider the taxpayer's free and unrestricted use of the property to be important, the key factor was the absence of a transferred deed.

In the instant case, we find that petitioner properly executed and delivered to the escrow agent a special warranty deed sufficient to transfer control of the residence. He no longer had the legal right to sell, lease, encumber, or prevent the sale, lease, or encumbrance of the property. If the bankruptcy court had approved the agreement, the residence would have automatically been released from escrow and transferred to Newbery pursuant to the terms of the agreement. Petitioner could in no way control the actions of the bankruptcy court.

Respondent places great weight on the fact that petitioner's continued occupancy was rent free and that Newbery never paid any part of the real estate taxes due on the residence. The only payments made by petitioner were to cover homeowner's fees commensurate with the normal expenses that a homeowner would incur with respect to his residence. Newbery was in bankruptcy, however, and thus unable to contribute to the payment of the homeowner's fees or taxes. Additionally, both petitioner and Newbery expected the agreement to be approved by the bankruptcy court quickly, and it would have been difficult to find a tenant for such a short period of time. Further, Newbery wished for petitioner

to remain on the premises to complete certain projects he had started and to maintain its condition. Although petitioner benefited from his continued occupancy of the residence, we are satisfied that petitioner's failure to pay rent is not evidence of maintained control. Unlike the taxpayer in *Continental Nut Co. v. Commissioner, supra,* petitioner's continued occupancy of the residence was a negotiated part of the settlement.[5]

Petitioner properly distinguishes *Continental Nut Co.* by noting that the taxpayer could have redeemed the property by a unilateral act; i.e., payment of the past due property taxes. Petitioner had no such right. An escrow agreement can be modified only by the mutual agreement of the parties concerned; the grantor has no power of revocation. *Kammert Bros. Enter., Inc. v. Tanque Verde Plaza Co.,* 428 P.2d 678 (Ariz. 1967).

Neither the special warranty deed from petitioner to Newbery nor the quitclaim deed from Newbery to petitioner was recorded. Respondent argues that this is evidence that the transfer was illusory and petitioner never intended to relinquish control over the residence. Petitioner accurately maintains that recordation of the deeds only has legal effect between the purchaser and a third party. Ariz. Rev. Stat. Ann. sec. 33-412(B) (West 1956); see *Chantler v. Wood,* 430 P.2d 713 (Ariz. 1967); *Rowe v. Schultz,* 642 P.2d 881 (Ariz. Ct. App. 1982). As to Newbery and petitioner, the transfer of the deed is all that is necessary to transfer title. Ariz. Rev. Stat. Ann. sec. 33-401 (West 1956); see *Gabitzsch v. Cole,* 386 P.2d 23 (Ariz. 1963).

Finally, petitioner and respondent each cite *Poirier & McLane Corp. v. Commissioner,* 547 F.2d 161 (2d Cir. 1976), revg. and remanding 63 T.C. 570 (1975), in support of their respective positions. In *Poirier & McLane Corp.,* the Court of Appeals for the Second Circuit thoroughly discussed the anatomy of a section 461(f) deduction while reversing a deci-

---

[5] The bankruptcy attorney for Newbery testified that

Dr. Davies had asked that he be allowed to remain until such time as [Newbery] sold [the residence]. [Newbery] * * * didn't have much in the way of cash assets that it could use to pay for the upkeep of the property. [T]here were condo owner or homeowners association fees, utility fees, and so forth, and since at that time my recollection is we thought we would get court approval fairly rapidly and would be in the market with the home certainly before the appraisal was stale, we frankly did not think Dr. Davies would be in the house very long, and we would have difficulty renting it for a short period. * * * [I]t saved [Newbery] * * * money.

sion of this Court which allowed the taxpayer to deduct a unilateral transfer of funds to satisfy a lawsuit commenced several years earlier. The taxpayer in *Poirier & McLane Corp.* was involved in a lawsuit filed in 1960. In 1964, without the consent of the claimants, the taxpayer established a trust to provide for a small portion of the amount claimed in the lawsuit. The taxpayer claimed a deduction in the amount of the trust. The Court of Appeals for the Second Circuit determined that the taxpayer's decision was totally voluntary, unilateral, and principally dictated by tax motives and consequently disallowed the deduction. We find the facts of *Poirier & McLane Corp.* to be inapposite to the instant case. The exigencies of litigation compelled petitioner to establish the escrow arrangement, and Newbery was aware of the arrangement and thus able to ensure that the assets remained beyond petitioner's control. Both of these factors were absent in *Poirier & McLane Corp.*

Based on the foregoing, we find that petitioner transferred control of the residence within the meaning of section 461(f)(2).

*Deduction Allowed but for Contest*

Section 461(f) does not authorize a deduction; it relates only to the timing of a deduction otherwise allowable under the Code. Sec. 1.461-2(e)(1), Income Tax Regs. The contest must prevent, and be the only factor preventing, a deduction for the taxable year. *Id.* Respondent argues that the approval of the bankruptcy court was required before Newbery could accept payment and thus petitioner never effected a deductible transfer. As support for this position, respondent cites *Weber v. Commissioner,* 70 T.C. 52 (1978). In *Weber* the taxpayer initiated a lawsuit contesting a bill for sewer charges from the town of Niagara, New York, believing that certain of the charges were improper and erroneous. Two checks were sent to the municipality to cover that portion of the charges that the taxpayer believed to be proper. It was the policy of the municipality not to accept partial payments and the checks were returned to the taxpayer. The following year the Niagara County Supreme Court ordered the municipality to accept the partial payment. The court ruled that because the checks were never accepted or presented to the bank,

they did not constitute payment in the year they were returned to the taxpayer.

Respondent argues that the Niagara County Supreme Court's mandate is equivalent to the bankruptcy court's required approval of the agreement. This argument is tenuous and overlooks the fact that Newbery did not refuse payment. The agreement specifically states that Newbery "desires to accept said payment." Petitioner correctly maintains that the bankruptcy court's approval is merely a procedural requirement approving a voluntary act, whereas the Niagara County Supreme Court's ruling mandates specific involuntary action. The two court actions are completely incongruous.

Absent the contest, petitioner was simply returning income to Newbery which had been previously included or was currently includable in income. Where funds received and included in income under a claim of right are later repaid, a deduction or offset is allowed for the year in which repayment is made. *North American Oil Consol. v. Burnet,* 286 U.S. 417, 424 (1932); see also *Healy v. Commissioner,* 345 U.S. 278 (1953).

Petitioner further argues that the legislative history of section 461(f) reveals that Congress intended to allow a deduction where payment has actually been made even though the liability is still being contested as to the amount or the item itself. S. Rept. 830, 88th Cong., 2d Sess. (1964) 1964-1 C.B. (Part 2) 505, 604. We agree. The goal of this legislation is to realistically and practically match income and deductions attributable to specific tax years. *Id.* In the instant case, the transfers made by petitioner in 1987 represented a return of income earned during the same or previous tax year that is properly matched by allowing the claimed deduction.

Accordingly, we find that absent the contest, petitioner would have been allowed a deduction.

Based on the foregoing, we find that petitioner complied with the requirements enumerated in section 461(f) and the accompanying regulations; therefore, petitioner is permitted

294

to deduct the $80,000 cash and the fair market value of the residence transferred into escrow.

To reflect the foregoing,

*Decision will be entered under Rule 155.*