**Langdon M. COOPER, Trustee in Bankruptcy for Ralph W. Rogers, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV.A.3:97CV502.**

United States District Court, W.D. North Carolina. Charlotte Division.

Jan. 21, 2005.

Stephen Andrew Jurs, Charlotte, NC, Nancy B. Paschall, Gastonia, NC, for Plaintiff.

James M. Sullivan, Assistant, Charlotte, NC, Lawrence P. Blaskopf, Washington, DC, for Defendant.

## ORDER

MULLEN, Chief Judge.

**THIS MATTER** is before the Court upon the Plaintiff's November 24, 2004 "Motion for Summary Judgment" (Document # 103) and Defendant's December 13, 2004 "Cross–Motion for Summary Judgment" (Document # 107). Defendant responded to Plaintiff's Motion on December 13, 2004. Plaintiff both filed a Reply to Defendant's Response and responded to Defendant's Motion on December 21, 2004. Therefore, the matters are ripe for consideration by the Court.

## FACTUAL SUMMARY & BACKGROUND

On April 12, 1988, Mr. Ralph Rogers ("Debtor") sold his stock in Bio–Ecological Services. Inc ("BES") to Waste Management of N.C. for $4,120,000 cash and an employment agreement worth an additional $1,900,000. Prior to the sale, Debtor arranged for Mr. William Deytens, a shareholder in BES, to redeem his BES shares. In 1989, Deytens and Waste Management instituted separate and distinct actions against Debtor arising out of the BES sale.

Deytens filed suit in federal district court in S.C. alleging fraud, violations of securities laws and breach of fiduciary duty in setting up the stock redemption. The district court awarded Deytens a $1,550,806 judgement. The judgment was later cancelled pursuant to the Global Settlement Agreement entered into by Detyens, Mr. Rogers, Mr. Rogers wife, Sharon, and the companies. The Global Settlement releases all parties from any liabilities, claims, causes of action, liens, recoveries, etc. from any other party.

Waste Management filed suit in this court alleging breach of employment agreement, stock purchase agreement, fiduciary duty, and securities fraud and constructive fraud. However, Waste Management dismissed that case in favor of the Global Settlement Agreement voluntarily entered into by the parties, and later approved by the Bankruptcy Court.

On January 12, 1993, Debtor filed a voluntary Chapter 7 Bankruptcy petition. In April 1993, Waste Management and Deytens separately filed Complaints to deny the debtor's discharge.

On August 24, 1994, the Bankruptcy Court entered the order approving the Global Settlement. Under the Settlement, Deytens, Waste Management and Debtor agreed to release all past and future claims arising out of the sale of BES and subsequent litigation. However, as an exception to the general release, Deytens and Waste Management maintained their proof of claims in Debtor's bankruptcy. Furthermore, the Global Settlement required Debtor and his wife to turn over specified properties to Langdon Cooper, a bankruptcy trustee ("Trustee"), including all tax refunds due to either. To date, the Trustee has converted the property into $1,026,105 for the benefit of the Debtor's creditors, and has distributed $741,248.53 to Deytens and Waste Management.

Based on Debtor's repayment of $1,026,105 (in cash and assets liquidated by

the trustee) to Debtor's bankruptcy estate, in March 1996 Trustee filed a form 1041, a Fiduciary Income Tax Return, on behalf of the Debtor's bankruptcy estate for the 1994 tax year. Trustee claims the bankruptcy estate is entitled to a $287,309 refund (tax paid on $1,026,105 pursuant to the claim of right doctrine) pursuant to 26 U.S.C. § 1341. On January 7, 1997, Internal Revenue Service denied the Trustee's claim. On September 23, 1997, the Trustee commenced the instant action. (Claim I).

In tax year 1991 Mr. Rogers and his wife incurred a net operating loss of $74,324. In 1992 Debtor and his wife incurred a net operating loss equal to $180,154. Thus, on March 11, 1996, the bankruptcy trustee also filed amended returns for tax years 1988 and 1989, carrying back the net operating losses incurred in years 1991 and 1992, pursuant to I.R.C. § 172, which authorizes taxpayers to carry back net operating losses "to each of the two taxable years preceding the taxable year of such loss." Had the deductions been allowed, the debtor would have received total tax refunds of $71,814. However, on January 7, 1997, Internal Revenue denied all of Trustee's refund claims. Therefore, Trustee commenced the instant action, claiming that the debtor is entitled to refunds of $21,371 for 1988 (Claim II) and $50,443 for 1989 (Claim III).

## PROCEDURAL SUMMARY & BACKGROUND

Trustee commenced the instant action on September 23, 1997 after the Internal Revenue Service (IRS) denied the Trustee's claims to overpaid taxes. The government sought dismissal of Claim II on December 1, 1997, asserting that the claim was barred by the statute of limitations.[1] 26 U.S.C. § 6511(a). However, the Court found that the claim was in fact not barred, as the suit had been timely filed.[2]

On October 31, 2000, District Court Judge Voorhees denied Defendant's Motion to Dismiss Counts I and II. The Court denied Defendant's Motion to Dismiss Court II, because the defendant essentially reiterated its statute of limitations argument already disposed of in the previous Order denying dismissal. The Court refused to dismiss Count I because of a lack of legal authority supporting either side's arguments.

On May 24, 2004, this Court entered an Order asserting that bankruptcy trustees do have standing to assert entitlement to claim of right refunds on behalf of debtors and for the benefit of the estate creditors under Internal Revenue Code (IRC) § 1341, regardless of § 1341's absence

---

**1.** The statute of limitations requires a taxpayer (or in this case the Trustee) to file suit for refund within two years of the date on which the government denied the claim. In the present case, the Plaintiff timely filed a "protective" claim with the IRS on September 3, 1993. The IRS erroneously denied Plaintiff's claim on October 15, 1993, and later orally withdrew its notice of disallowance, a fact confirmed by the IRS attorney who made the retraction. Thus, the "protective" claim was to remain open until the final, "perfected" claim was filed.

Trustee filed the perfected claim on March 11, 1996. The IRS then denied that claim on

January 7, 1997. Thus, in an Order dated August 17, 1999, this Court through Judge Voorhees found that "the filing of the instant action was timely under § 6532(a)(1) in that Plaintiff filed this action within two years of the date of the second notice of disallowance."

**2.** The Court affirmed its findings a second time in an Order dated October 31, 2000 when Defendant again moved to dismiss Count II claiming that the claim was barred by the statute of limitations, and again in September 2003 at a hearing on jurisdictional issues before the undersigned judge.

from IRC § 1398, which lists the tax attributes to which a bankruptcy estate succeeds.

Thereafter, the defendant filed a motion *in limine* seeking to exclude evidence of the debtor's wife's portion of the 1988 and 1989 refund claims. The Court denied the government's motion on the grounds that the Anti–Assignment Act does not apply to prohibit assignment of claims against the United States where a transfer occurred by operation of law. In this case, the Bankruptcy Court entered an Order on April 15, 1996, which directed the IRS to deliver to the Trustee any tax refund checks for taxable years ending on or before the date of Debtor's filing for Chapter 7 bankruptcy. In its Order, the Bankruptcy Court stated that such order was pursuant "to the settlement agreement approved by [the] court that the Trustee is entitled to any tax refunds the estate may receive from years when Ralph and Sharon Rogers filed joint tax returns." Thus, this Court found that such approval of the Bankruptcy Court of the settlement agreement, in conjunction with the April 15, 1996 Order directing the IRS to deliver refund checks directly to the Trustee, evinced a transfer by operation of law.

In August of 2004, the government filed a Proffer of Evidence of Fraud, pursuant to the Court's July 16, 2004 Order. Plaintiff trustee responded on October 12, 2004, and contemporaneously filed a Motion to Reopen Time for Filing Dispositive Motions. The Court granted Plaintiff's motion on October 27, 2004.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure allows a ruling of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202, (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. But the party opposing summary judgment may not rest upon mere allegations or denials, and a "mere scintilla of evidence" is insufficient to overcome summary judgment. *Id.* at 249–50, 106 S.Ct. 2505.

Courts, in considering motions for summary judgment, view the facts and inferences in light most favorable to the party opposing the motion. *See id.* at 255, 106 S.Ct. 2505; *Miltier v. Beorn,* 896 F.2d 848 (4th Cir.1990); *Cole v. Cole,* 633 F.2d 1083 (4th Cir.1980). Summary judgment is thus proper where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotations omitted).

## DISCUSSION

Plaintiff moves the Court to enter summary judgment in his favor on all claims pursuant to Federal Rule of Civil Procedure 56(c), as, he claims, no genuine issue of material fact is in dispute for which a jury trial is needed. Defendant filed a cross-motion for summary judgment, and thus seeks summary relief in its favor as to Count I.

## I. *Claim I: I.R.C. § 1341*

■ The Claim of Right Doctrine originated with the Supreme Court decision,

*North American Oil Consolidated v. Burnet*, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932). Essentially, the claim of right doctrine holds that if a taxpayer receives income under a "claim of right and without restriction as to its disposition," the taxpayer must report that amount on her tax return in the year she received such income. *Id.* at 424, 52 S.Ct. 613. The claim of right doctrine applies whether or not the taxpayer is later required to repay the sum. However, a taxpayer who later refunds (or becomes obligated to refund) the amount is entitled to a deduction in the year of repayment. *See Dominion Resources, Inc. v. U.S.*, 219 F.3d 359 (4th Cir.2000).

Section 1341 of the Internal Revenue Code was enacted to provide a remedy to those who are entitled to a deduction because of such a refund, but must repay in a year where tax rates have changed, resulting in a smaller deduction than the amount previously included. *See id.* at 363 ("In many instances, the deduction allowable in the later year did not compensate the taxpayer adequately for the tax paid in an earlier year. To relieve this inequity, Congress enacted § 1341, which permits taxpayers in this situation who meet certain requirements to recompute their taxes for the year of receipt if they chose to do so"). "In sum, § 1341 is designed to put the taxpayer in essentially the same position he would have been in had he never received the returned income." *Id.*

Section 1341 provides:

(a) General Rule.—If

(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year that the taxpayer did not have an unre-

stricted right to such item or portion of such item; and

(3) the amount exceeds $3000, then the tax imposed shall be the lesser of the following:

(4) the tax computed with such deduction; or

(5) an amount equal to-

(A) the tax for the taxable year computed without such deduction, minus

(B) the decrease in tax under this chapter for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years).

■ Thus, the deduction computation under § 1341 serves as a relief provision from the combined effects of the claim of right doctrine and annual changes in tax rates. However, the following four requirements must be met:

I. the taxpayer must appear to have had an unrestricted right to an item included in gross income for a prior taxable year;

II. it must have been established after the close of that prior year that the taxpayer did not have an unrestricted right to the item;

III. the taxpayer must be entitled to deduct the amount of the item; and

IV. the amount of the deduction must exceed $3000. *Dominion Resources*, 219 F.3d at 363.

Neither party disputes that requirements II and IV are met, as Plaintiff clearly did not have an unrestricted right to the money in a subsequent year and the amount greatly exceeded $3000.00. However, the government adamantly asserts that the debtor did not fulfill requirements

I and III, and as a result, neither does the Trustee.

■ The government alleges that the debtor initially acquired the income due to a fraudulent misrepresentation inducing a sale of stock. As such, the government maintains that it could not have appeared to the debtor that he had an unrestricted right to the money. *See Culley v. United States*, 222 F.3d 1331, 1335 (Fed.Cir.2000). Moreover, the government claims that the debtor was not entitled to calculation pursuant to § 1341 because the statute requires that the taxpayer be entitled to deduct the amount.

In support of its claim, the government cites to the Bankruptcy Code, 11 U.S.C. § 704, which obligates the bankruptcy trustee to collect and liquidate property belonging to the estate. Moreover, the bankruptcy estate consists of "all legal or equitable interests *of the debtor* in property *as of the commencement of the case.*" 11 U.S.C. § 541(a)(1). The government interprets this to mean that the Trustee "can only assume rights the debtor had [in the estate property] at the commencement of the bankruptcy case" and nothing more. However, the Court is not satisfied that public policy interests are served by mechanically applying the statute in the present case as if the debtor were the plaintiff in this litigation.

The plaintiff asserts that the Court should find the trustee is entitled to a refund calculated pursuant to § 1341 for two reasons: (1) Plaintiff meets the requirements under § 1341, entitling him to a refund, because the debtor met the requirements under § 1341, and/or (2) that even if the debtor did commit fraud as the

government contends, the bad acts of the debtor should not be imputed to the Trustee. The Court finds that there is a question of whether the debtor committed fraudulent acts when he sold his business, such so that the government would overcome a summary judgment motion had the debtor been the Plaintiff. However, the debtor is not the Plaintiff in the present action, so the Court will carefully consider the issue of imputation. *See McNamara v. PFS (In re Personal & Bus. Ins. Agency)*, 334 F.3d 239, 346 (3rd Cir.2003) ("There are strong equitable arguments that favor courts' consideration of postpetition events. A number of courts have applied these arguments in concluding that the defense of *in pari delicto* should not be applied when a bad actor has been removed and the defense is serving only to bar the claims of an innocent successor"). In fact, since the trustee maintains his claims to what was formerly debtor's property for the benefit of the creditors, the Court believes it important to clarify who the plaintiff is in the present case, and correspondingly, who stands to benefit if calculation pursuant to § 1341 is permitted. To be sure, it is not the debtor.

The government states in its brief in opposition to Plaintiff's motion, that "the plain language of the bankruptcy code bars the court from considering the trustee's status as an innocent successor to the debtor's claims." This Court is not convinced.

Admittedly, Courts, on public policy grounds, consistently find that persons who receive income as a result of bad acts, and who later repay the money are not entitled to calculation under § 1341.[3] *See*

---

**3.** Such reasoning plainly is derived from the defense of *in pari delicto* which stands for the proposition that one who participates in wrongdoing cannot later recover damages as a result of the wrongdoing. Certain courts

have recognized that in the bankruptcy context, defenses such as *in pari delicto*, or in this case, the government's "defense" of unclean hands (Plaintiff's alleged commission of fraud), do not advance the public policy goals

*McKinney v. United States*, 574 F.2d 1240 (5th Cir.1978) (same); *Wood v. United States*, 863 F.2d 417 (5th Cir.1989); *see also Revenue Ruling*, Rev. Rul. 68–153, 1968 WL 15327 (1968) (holding proceeds from embezzlement activity later repaid, the embezzler not permitted a refund calculated pursuant to I.R.C. § 1341). As such, the Court concedes that if the debtor in this case were the plaintiff seeking a refund, the I.R.S.'s denial of refund computation under § 1341 likely is warranted. In the least, Plaintiff's summary judgment motion would not survive. However, the debtor is not the plaintiff. The plaintiff, here, is the creditor, represented by the trustee.

■ Imputing the bad acts of the debtor onto the bankruptcy trustee in the present case renders a categorically inequitable result, that is, the innocent victimized creditors get nothing, and the government gets a windfall. Consequently, this Court finds that the government is estopped from asserting fraud in an effort to avoid refunding an overpayment of taxes, when such "defense" works to deprive the very *victims* of the fraud from recovering what is essentially and rightfully their's. Such a deprivation does not further the purpose of the fraud exception to § 1341 recovery, which seeks to disallow a wrongdoer from reaping a benefit from such wrongdoing. Here, the culprit has been removed, and

only the creditors, not the wrongdoer, benefit. As such, evidence of the debtor's fraudulent acts are wholly incidental, because the debtor is not the plaintiff. When the fraudulent actor is taken out of the equation, the purpose of § 1341, an equitable relief provision, is served by awarding the Trustee a refund, not vice versa.

■ Moreover, the government contends that Requirement III is not met because the sums were not wholly deductible in 1994. Contrarily, Plaintiff insists that the money paid back pursuant to the global settlement agreement was deductible as an ordinary and necessary business expense under I.R.C. § 162, the year in which the debtor, pursuant to the settlement agreement, transferred all right and control of the property to the trustee.

The government's first contention is that insufficient facts show that the global settlement ever took effect. However, as stated above, in order to overcome a motion for summary judgment, a person opposing the motion cannot rely solely on allegations, but must bring forth evidentiary proof to support his or her claim. The government's contention that "there is no evidence that the global settlement agreement became effective" is not substantiated by the exhibits and affidavits.[4]

intended. *See Mas v. Coca Cola Co.*, 163 F.2d 505 (4th Cir.1947)(Where plaintiff maintaining suit in equity conceded the commission of forgeries, that prior fraud affected his cause of action so as to furnish basis for dismissal on ground that he did not come into court with "clean hands"). In such cases, Debtor is confused with the real Plaintiff, the Trustee. The trustee is somewhat-agent of the debtor, but confusingly, working for the benefit of the creditors. See, for instance, the Seventh Circuit case *Scholes v. Lehmann*, 56 F.3d 750, which noted that legal fictions in the bankruptcy context often deprive the victims of wrongdoing any recovery. Instead, courts

such as the *Scholes* court, can disregard such fictions or public policy reasons for denying claims.

4. See "Order Approving of Settlement of Controversy Among the Trustee, the Debtor, Waste Management of North America, Inc., William J. Detyens, and Others" dated April 22, 1994, as well as the April 15, 1995 "Order Directing IRS to Deliver Checks to Trustee," in which the Bankruptcy Court directs various parties and entities to act pursuant to the global settlement agreement. Such approval of and reliance on the agreement by the Court

Secondly, the government contends that even had the global settlement agreement been effectuated, the trustee collected cash and assets in years 1993 and 1995, not solely in 1994, the year in which the Trustee sought a refund. The government asserts that the tax code thus precludes the trustee from taking the deduction in 1994. The government refers to Trustee's response to Interrogatory No. 2 (Government's Exhibit 1), in which he enumerates the assets and cash amounts he, as trustee, collected from the debtor. The Response lists items totaling $132,935.20 for year 1993, and $230,795.29 for year 1995, and corresponding dates. The parties dispute what the dates represent. The government asserts that the dates on the interrogatory represent dates on which the amounts were *turned over* to the trustee. The plaintiff, on the other hand, maintains that the response was simply a statement of the amounts of cash deposited into the trust account. He states that the dates assigned to the deposit do not represent the date that he became, as trustee, entitled to those assets.

Pursuant to his duty as trustee, Langdon Cooper began marshaling any assets that the debtor had an interest in, whether his interest represented 100% or merely some portion thereof.[5] Then, in 1994, the bankruptcy court approved the global settlement agreement, thereby affirming the agreement previously entered into by the parties. The trustee rightly notes that were it not for the global settlement's approval, the debtor's bankruptcy alone would not have entitled the trustee to legal ownership of the entirety of certain properties. For instance, because the debtor's wife did not file for bankruptcy protection

and several of the properties were held by the Rogers' as tenants by the entirety, until the court approved the settlement agreement, nothing entitled the trustee to the debtor's wife's interest in those properties. Only by formal agreement and later ratification by the bankruptcy court did the trustee become entitled to legal ownership of such properties.

Furthermore, as for the deposits made in 1995, the trustee contends that those entries simply represent dates after which he liquidated assets and deposited them into the trust account. He claims those dates in no way illustrate the date on which he gathered the underlying assets or the date on which he became legally entitled to them. Importantly, ownership was transferred in 1994, when the bankruptcy court approved the global settlement. *See Davies v. Comm.*, 101 T.C. 282, 1993 WL 387155 (1993)(holding that transferring the legal right to sell, lease, encumber, or prevent the sale, lease or encumbrance of property is a deductible event).

The allegations made by the government simply are not corroborated by the evidence. Thus, considering the totality of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," the Court finds that the government failed to bring forth adequate evidence to refute Plaintiff's evidence showing that the Court's approval of the settlement agreement gave him legal title to the assets in 1994, and contemporaneously deprived the debtor from control of those assets. Approval of the settlement agreement transferred legal title from the debtor and his wife to the bankruptcy trustee to gather, liquidate and to

---

produces an inference that the agreement is effective.

**5.** Marshaling assets early on in a bankruptcy case is a typical practice to prevent assets

from being alienated from the estate. Such a practice thereby eliminates the risk that the debtor may gift or sell assets, or otherwise reduce the value of the estate.

distribute the proceeds to the enumerated creditors, and entitled the trustee to a deduction in the same year.

The government, in it Cross–Motion for Summary Judgment argues that even if the debtor were entitled to computation under § 1341, the refund sought was for a tax year subsequent to the year in which Debtor filed for bankruptcy protection. The government claims that, as such, any refund the debtor may be entitled to is the debtor's property, not his bankruptcy estates'.

The government's contention is misplaced. The deduction sought by the estate arises from Debtor's overpayment of taxes in 1988, and the estate, on form 1041 (estate tax return), not 1040 (individual tax return), sought to deduct the amount previously overpaid, and ultimately, to receive a refund. This Court held in its May 24, 2004 Order that a bankruptcy trustee has standing to assert entitlement to claim of right refunds pursuant to § 1341. Thus, as explained above, the claim is that of the estate, not of the debtor, and the claim refers to a refund of an overpayment of taxes in tax year 1988, a year prior to the commencement of the bankruptcy case.

The government furthermore contends that payments made to the trustee were not deductible in 1994 as ordinary and necessary business expenses under I.R.C. § 162. It cites to the Fifth Circuit case, *B & L Farms Co. v. United States*, 389 U.S. 835, 88 S.Ct. 45, 19 L.Ed.2d 96 (1967), which held essentially that mere turnover of property to a bankruptcy trustee does not give rise to a deduction, and that the deduction is allowable only when actual payment to creditors to tendered.

This case is distinguishable. Unlike the *B & L* case, plaintiff turned over property to the trustee as payment pursuant to the global settlement agreement, which was incidentally later approved by the bankruptcy court. In *B & L*, the court reasoned, "The trustees did not have any fixed duty to pay over any specific amounts to any particular creditors" and thus was not a deductible expense until the trustee actually paid the creditor(s). *Id.* at 410. The settlement agreement, on the other hand, spelled out all property and moneys the trustee was to gather and liquidate for the benefit of the debtor's creditors in settlement of "all disputes and claims among them." It is well settled in this circuit and elsewhere that "payments made to settle litigation are deductible as ordinary and necessary business expenses when payments have business origin and otherwise satisfy mandates for business expense." *Chief Industries, Inc. v. C.I.R.*, 2004 WL 377058, T.C.Memo.2004–45; *see Graham v. C.I.R.*, 326 F.2d 878 (4th Cir. 1964); 26 U.S.C.A. §§ 162(a), 263. No one asserts that the transfer of debtor's rights in the property to the trustee transpired pursuant to settlement of a dispute over personal expenses. As such, Debtor's payment to trustee qualifies as a payment made pursuant to the settlement of a business dispute, and is consequently deductible under § 162 as a necessary and ordinary business expense.

Thus, for the reasons articulated above, Plaintiff's Motion for Summary Judgment as to Court I is hereby granted and Defendant's Cross–Motion for Summary Judgment a to Count I is denied, as there exists no genuine issue for trial.

## II. Claims II & III: I.R.C. § 172 Loss Carryback

In 1991, Debtor and his wife incurred business losses of $74,324. In 1992, they incurred further losses equal to $180,154. On March 11, 1996, Trustee filed amended returns for tax years 1988 and 1989, carrying back the net operating losses incurred

in years 1991 and 1992, pursuant to I.R.C. § 172, which authorizes taxpayers to carry back net operating losses "to each of the two taxable years preceding the taxable year of such loss." Thus, the Trustee claimed tax refunds totaling $71,814. The I.R.S. denied all of Trustee's claims on January 7, 1997. Trustee seeks refunds of $21,371 and $50,443 for tax years 1988 and 1989 respectively.

■ First, the government maintains in its opposition to Plaintiff's motion for summary judgment that the trustee is precluded from receiving tax refunds arising from debtor's wife's portion of the business losses claimed on their 1988 and 1989 tax returns. The government again contends that such is the case because the Anti–Assignment Act, 31 U.S.C. § 3727, deems a claim against the United States that is assigned to another person or entity "absolutely null and void." *Western Pac. R. Co.,* 268 U.S. 271, 275, 45 S.Ct. 503, 69 L.Ed. 951 (1925).

■ However, as this Court stated previously in its July 2, 2004 Order, the Anti–Assignment Act does not apply to prohibit assignments that are made by operation of law. *See Erwin v. United States,* 97 U.S. 392, 397, 7 Otto 392, 14 Ct.Cl. 577, 24 L.Ed. 1065 (1878)("The act of Congress to prevent frauds upon the treasury of the United States applies only to voluntary assignment of demands against the government. It does not embrace cases where there has been a transfer of title by operation of law. The passing of claims to heirs, devisees, or assignees in bankruptcy is not within the evil at which the statute aimed"). Furthermore, this Court, citing statutory authority in support thereof, held

31 U.S.C. § 3727 does not apply in this case. Here, the tax refund claims are properly assigned to the trustee for the benefit of the trust's creditors, an assignment explicitly exempted from the

prohibition of § 3727. *See Goodman* 102 U.S. at 561, 102 U.S. 556 (stating that 31 U.S.C. § 3727 does not forbid assignments of claims against the government for the benefit of creditors). Furthermore, the transfer occurred pursuant to the bankruptcy court order dated April 15, 1996, which appointed the receiver of the claim against the government "for the benefit of those entitled thereto." *Price,* 173 U.S. at 424–25, 19 S.Ct. 434. The *Price* court made clear that transfers to an appointed receiver for the benefit of creditors exempts the debt owed from the nullifying effects of § 3727. *See id.* Thus, the Court finds that any assignment or transfer of Mrs. Roger's tax refund claims to the bankruptcy trustee arose by operation of law, a transfer not affected by the proscriptive demands of the Anti–Assignment Act, 31 U.S.C. § 3727. *See Redfield v. U.S.,* 27 Ct.Cl. 393 (1892) (holding that an appointment by a State court in proceedings supplementary to execution against an insolvent effects a transfer of his claim against the United States by operation of law, and does not come within the act prohibiting the assignment of claims).

Second, the government maintains that a question exists as to whether Debtor's wife ever assigned her rights in tax refund(s) to the trustee. Initially, the government contends that because there is no evidence of a formal "closing" of the global settlement agreement, the trustee cannot rely on the agreement's dictates to prove that the trustee was to receive any tax refunds attributable to Debtor's wife. However, the government, in opposing summary judgment, "may not rest upon mere allegations or denials, and a 'mere scintilla of evidence' is insufficient to overcome summary judgment." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249–50, 106

S.Ct. 2505, 91 L.Ed.2d 202 (1986). The only shred of evidence the government produced in support of its assertion is found in a footnote to its brief which states, "The trustee, when asked, represented to the government's attorneys that no formal closing *per se* took place." However, considering the totality of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," even viewing the facts and inferences in light most favorable to the government, the Court finds that the government failed to meet its burden to refute, with other documentary evidence, the vast documentary evidence submitted by the Plaintiff tending to show the agreement was executed. Persuading the Court that the agreement *may* not have been executed is not enough to overcome summary judgment at this late date, long after the close of discovery.

Next, the government asserts that even if the global settlement was effectuated, no language is present in the document requiring debtor's wife to turn over tax refunds due her to the bankruptcy trustee. However, the Agreement unambiguously states, "Ralph Rogers and Sharon Rogers shall have no interest...in any tax refunds the estate may receive from years when Ralph Rogers and Sharon Rogers filed joint returns" (page 10). Furthermore, in an Order dated April 15, 1996 titled "Order Directing IRS to Deliver Refund Checks to Trustee," the Bankruptcy Court ordered the IRS to deliver *any refund checks* of Ralph and Sharon Rogers for taxable years ending on or before the date of Ralph Rogers' bankruptcy filing on 12 January 1993. Accordingly, the Trustee prepared and filed each of the amended tax returns claiming the net operating loss carry-backs on behalf of the Debtor's bankruptcy estate for tax years 1988 and 1989. Thus, the Court finds that the government failed to corroborate its assertion that the settlement agreement did not require Debtor's wife to turn over any tax refunds due her to the Trustee.

Discovery has concluded in this case, yet the government has come forth with no specific evidence supporting its position. Accordingly, the Court finds in considering the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, that there is no genuine issue of material fact and that the Plaintiff is entitled to judgment as a matter of law as to Claims II and III. F.R.C.P. 56(c).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment is hereby **GRANTED** in its entirety, and Defendant's Cross Motion for Summary Judgment as to Count I is hereby **DE-NIED**. As such Plaintiff trustee is entitled to tax refunds in the amount of $359,123.00.